BARBER, Appellant,

v.

BUCKEYE MASONRY & CONSTRUCTION COMPANY et al., Appellees.

[Cite as *Barber v. Buckeye Masonry & Constr. Co.* (2001), 146 Ohio App.3d 262.]

Court of Appeals of Ohio,
Eleventh District, Geauga County.

No. 2000–G–2305.

Decided Oct. 9, 2001.

264

*Shapiro, Kendis & Assoc. Co.* and *Geoffrey J. Shapiro*, for appellant.

*Bricker & Eckler, L.L.P., Thomas R. Sant* and *Bobbie S. Sprader*, for appellee Buckeye Masonry & Construction Co.

*Betty D. Montgomery*, Attorney General, and *Virginia Egan Fisher*, Assistant Attorney General, for appellee Administrator, Bureau of Workers' Compensation.

---

GRENDELL, Judge.

Thomas J. Barber ("appellant") appeals the August 2, 2000 judgment entry by the Geauga County Court of Common Pleas, granting a motion for summary judgment in favor of Buckeye Masonry & Construction Co. ("Buckeye Masonry") and the Bureau of Workers' Compensation ("bureau"). In doing so, the trial court denied appellant's cross-motion for summary judgment. By granting summary judgment in favor of Buckeye Masonry and the bureau, the trial court denied appellant the right to participate in benefits under the Ohio Workers' Compensation Act.

Appellant was employed by Buckeye Masonry as a full-time "laborer." Appellant's employment required him to travel daily to assigned construction sites, using his own personal vehicle, within the Ohio counties of Ashtabula, Geauga, and Lake. Appellant would report directly to his assigned construction site until he was informed of a transfer to another site. Appellant would remain at the assigned construction site for the entire work day. These assignments were of limited duration; however, in some instances, appellant would be assigned to a different project the following day.[1] Appellant was not compensated for travel time or travel expenses, nor was appellant required to appear at Buckeye Masonry's headquarters; rather, appellant would report directly to his assigned site. Further, the work that appellant performed occurred solely at the assigned construction site, and appellant was not required to transport any material or equipment.

On June 22, 1998, while en route from home to a construction site at the Geauga Senior Center in Geauga County, appellant was involved in a motor vehicle accident. The distance between appellant's home and the Geauga Senior Center was approximately twenty-nine miles, and the location of the accident was approximately eleven miles from appellant's home. Appellant sustained serious physical injuries.

---

1. For instance, from June 1996 through June 1998, appellant was assigned to nineteen different construction sites with the duration at these sites ranging between eight hours at one site and nine hundred eighty-eight hours at another site.

Subsequently, on December 17, 1998, appellant applied for payment of compensation and medical benefits under the Ohio Workers' Compensation Act. The bureau initially "allowed" appellant's workers' compensation claim; however, Buckeye Masonry appealed this decision.

On March 3, 1999, a hearing was conducted before a district hearing officer to address Buckeye Masonry's appeal. The district hearing officer allowed appellant's claim based upon the Supreme Court of Ohio's holding of *Ruckman v. Cubby Drilling, Inc.* (1998), 81 Ohio St.3d 117, 689 N.E.2d 917, and the "special hazard" exception to the "coming and going" rule. The district hearing officer indicated that, like *Ruckman*, the extensive travel and constantly changing locations made appellant's travel to the assigned construction sites a "special hazard" of his employment. Buckeye Masonry appealed this decision.

A hearing was conducted on April 30, 1999, before a staff hearing officer. The staff hearing officer affirmed the district hearing officer's decision, allowing appellant's claim. However, the staff hearing officer found that appellant was not a "fixed-situs" employee; as a result, the "coming and going" rule was not applicable. Buckeye Masonry again appealed this decision.

Another hearing was conducted on August 19, 1999, before the Industrial Commission. In a two-to-one decision, filed December 6, 1999, the Industrial Commission "disallowed" appellant's claim. The commission determined that appellant's injuries did not "arise out of" his employment because the accident did not occur while appellant was carrying on Buckeye Masonry's business and the proximity between the accident and appellant's employment was too remote to establish a causal connection. The commission further indicated that Buckeye Masonry had no control over the scene of the accident and did not derive any benefit from appellant's presence at the scene. Distinguishing *Ruckman*, the commission found that there was no special hazard or risk in the twenty-nine-mile distance that appellant commuted, appellant did not receive compensation based upon the distance between the site and Buckeye Masonry's headquarters, appellant was not carrying work-related items in his personal vehicle, and appellant did not stay overnight at a hotel.

The dissenting opinion of the commission determined that appellant was injured "in the course of" and "arising out of" his employment. Specifically, the dissenting opinion found that, like *Ruckman*, regardless of the fact that appellant's duration at each site was limited, appellant was a "fixed-situs" employee whose work day began and ended at the assigned site. Further, the dissenting opinion indicated that mileage traveled was irrelevant and that appellant was injured while carrying out a condition of his employment.

On January 3, 1999, appellant filed a complaint in the trial court, appealing the decision of the Industrial Commission, naming Buckeye Masonry and the administrator of the bureau as defendants (collectively referred to as "appellees").

Subsequently, on June 8, 2000, appellees filed a joint motion for summary judgment, attaching the affidavit of Donald A. Locy, president of Buckeye Masonry.[2] Appellees asserted that appellant was a fixed-situs employee who did not fall within any exception of the "coming and going" rule. Appellees further argued that the holding of *Ruckman* was very fact specific and limited to only those facts.

On July 6, 2000, appellant filed a response to appellees' motion and a cross-motion for summary judgment, attaching, among other things, appellant's affidavit, a list of the various sites that he was assigned to during the last two years, and the police report from the accident.[3] Appellant argued that his injuries were sustained "in the course of" and "arising out of" his employment because the facts of his situation were similar to *Ruckman*. Appellant contended that, as in *Ruckman*, he faced a "special hazard" in his employment because of the constantly changing job sites and the lack of knowledge of where he would be assigned the following day.

On July 21, 2000, appellees filed a response to appellant's motion for summary judgment, stating that appellant was seeking an unlawful expansion of workers' compensation coverage solely on the argument that his job site was not always at the same location. Appellees emphasized that appellant would work only at one particular site during the entire work day and that his commute was consistent with what is commonly experienced by the general public.

In a decision filed August 2, 2000, the trial court granted appellees' motion for summary judgment. In doing so, the court denied appellant's cross-motion for summary judgment. The trial court stated that appellant was not injured "in the course of" or "arising out of" his employment. Specifically, the trial court found that appellant was a fixed-situs employee, making the "coming and going" rule applicable, and the facts of appellant's case did not warrant an extension of *Ruckman*.

Appellant filed a timely notice of appeal asserting the following assignment of error:

---

2.  In his affidavit, Donald Locy stated that laborers drove an average of twenty to thirty miles to an assigned site, and Buckeye Masonry's projects encompassed three counties, which is, at most, a fifty-mile radius.

3.  In his affidavit, appellant stated that in any given week, it was possible for him to work at one or more work sites within a three-county area.

"The trial court erred to the prejudice of the plaintiff-appellant, Thomas Barber[,] in overruling his motion for summary judgment and by granting summary judgment in favor of the defendants."

In appellant's sole assignment of error, appellant contends that the undisputed facts of his case mirror *Ruckman* by which the Supreme Court of Ohio ruled in favor of the injured workers. Specifically, appellant asserts that, like *Ruckman,* he went from site to site, and that, although his travel encompassed a three-county area, as opposed to a three-state area, distance is not a predominant factor. Appellant further avers that, like *Ruckman,* he faced the same increased risk of road travel because he did not commute to a regular place of business.

The ultimate issue before this court is to determine whether the trial court properly granted appellees' motion for summary judgment, resulting in the denial of appellant's motion for summary judgment. Accordingly, we begin with the appropriate standard of review.

In reviewing a trial court's entry of summary judgment, a court of review must conduct a *de novo* review. *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241.

Civ.R. 56(C) provides:

" * * * *Summary judgment shall be rendered* forthwith *if* the pleadings, depositions, answers to interrogatories, written admissions, affidavits * * * show that *there is no genuine issue as to any material fact* and that the moving party is entitled to judgment as a matter of law * * * that *reasonable minds can come to but one conclusion* * * * adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor. * * * " (Emphasis added.)

A "genuine issue" exists when a reasonable jury could return a verdict for the nonmoving party based upon the evidence. *Anderson v. Liberty Lobby, Inc.* (1986), 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202.

Civ.R. 56(E) provides:

"* * * When a motion for summary judgment is made and supported * * * *an adverse party* may not rest upon the mere allegations or denials of the party's pleadings, but * * * *must set forth specific facts showing that there is a genuine issue* for trial. If the party does not so respond, summary judgment, if appropriate, shall be entered against the party." (Emphasis added.)

In the case *sub judice,* before independently determining whether the trial court properly granted appellees' motion for summary judgment, we must first discuss the underlying issue concerning appellant's claim of entitlement to

participate in the Ohio Workers' Compensation Fund. Our discussion will focus mainly on *Ruckman v. Cubby Drilling, Inc.* (1998), 81 Ohio St.3d 117, 689 N.E.2d 917, since this case was the focal point for the parties' arguments and the basis for the decisions by the trial court and the bureau.

The purpose of the Ohio Workers' Compensation Act is to provide compensation to employees and their dependents for injury, occupational disease, or death, resulting from the employee's employment. Section 35, Article II, Ohio Constitution. Under the Act, "injury" is limited *only* to those injuries that are received "in the course of" *and* "arising out of" the injured employee's employment. R.C. 4123.01(C). While these two requirements overlap, an injured employee must prove the existence of both requirements. Additionally, although R.C. 4123.95 provides that these requirements should be liberally construed in favor of awarding benefits to injured employees, the goal of the system is to ensure *proper* payment. The Workers' Compensation Act was not created as a general insurance fund to compensate all injuries to employees; rather, the Act provides for compensation for injuries which occur "in the course of" and "arising out of" an employee's employment. *Fletcher v. Northwest Mechanical Contr., Inc.* (1991), 75 Ohio App.3d 466, 470, 599 N.E.2d 822.

Specifically, the "in the course of" requirement relates to the time, place and circumstances of an injury, which determines whether a nexus exists between the employee's employment and the injury. *Ruckman, supra,* 81 Ohio St.3d at 120, 689 N.E.2d 917, citing *Fisher v. Mayfield* (1990), 49 Ohio St.3d 275, 277, 551 N.E.2d 1271. Although these factors are not dispositive, a compensable injury does not necessarily have to be sustained in the actual performance of work; rather, an injury is compensable if it is sustained while engaging in activities that are consistent with the employment and logically related to the employer's business. *Ruckman* at 120, 689 N.E.2d 917, citing *Kohlmayer v. Keller* (1970), 24 Ohio St.2d 10, 12, 263 N.E.2d 231, and *Sebek v. Cleveland Graphite Bronze Co.* (1947), 148 Ohio St. 693, 36 O.O. 282, 76 N.E.2d 892, paragraph three of the syllabus.

The "arising out of" requirement necessitates a causal connection between the injury and the employment. *Ruckman* at 122, 689 N.E.2d 917, citing *Fisher, supra,* at 277–278, 551 N.E.2d 1271. Such a determination requires application of the "totality of the circumstances" test, also referred to as the "*Lord*" test. Although many uncompensable injuries bear some causal connection to an injured employee's employment, the legal analysis must focus on the nature and degree of the causal connection between the injury and the employment. *Stivison v. Goodyear Tire & Rubber Co.* (1997), 80 Ohio St.3d 498, 499, 687 N.E.2d 458. The following factors are enumerated under this test to

determine whether a sufficient causal connection exists between the injury and the employment: "(1) the proximity of the scene of the accident to the place of employment, (2) the degree of control the employer had over the scene of the accident, and (3) the benefit the employer received from the injured employee's presence at the scene of the accident." *Ruckman, supra,* 81 Ohio St.3d at 122, 689 N.E.2d 917, quoting *Lord v. Daugherty* (1981), 66 Ohio St.2d 441, 20 O.O.3d 376, 423 N.E.2d 96, syllabus. Nevertheless, the failure to demonstrate these factors under the "totality of the circumstances" test does not automatically prohibit participation in the fund, since these factors are not exhaustive and continue to evolve. *Ruckman* at 122, 689 N.E.2d 917, citing *Fisher, supra,* at 279, 551 N.E.2d 1271.

This is apparent because workers' compensation cases are very fact specific; thus, one test or one set of rules cannot apply to all factual possibilities. *Id.,* citing *Fisher* at 280, 551 N.E.2d 1271. For instance, the "coming and going" rule is applied to "fixed-situs" employees who are injured while traveling to and from their place of employment. The Supreme Court of Ohio has defined a "fixed-situs" employee as one who begins his employment duties once he arrives at his designated work place, *regardless of the fact that he may be reassigned to a different work place monthly, weekly, or even daily. Ruckman* at paragraph one of the syllabus. In such a situation, each particular job site may constitute a fixed place of employment. *Id.* at 120, 689 N.E.2d 917; *Demko v. Ohio Bur. of Workers' Comp.* (Oct. 7, 1994), Portage App. No. 93–P–0067, unreported, 1994 WL 587963.

■ Pursuant to the "coming and going" rule, a fixed-situs employee is generally *not* entitled to participate in the workers' compensation fund because a causal connection does not exist between his injury and his employment to satisfy the "arising out of" requirement. *Ruckman, supra,* 81 Ohio St.3d at 119, 689 N.E.2d 917, citing *MTD Products, Inc. v. Robatin* (1991), 61 Ohio St.3d 66, 68, 572 N.E.2d 661. The reasoning behind this rule is that "time spent commuting is considered a private activity, not one undertaken in the service of the employer." *Slagle v. White Castle Sys., Inc.* (1992), 79 Ohio App.3d 210, 214, 607 N.E.2d 45.

■ In rare circumstances, where it is determined that an injury occurred "in the course of" the employee's employment but fails to satisfy the "totality of the circumstances" test, a fixed-situs employee may overcome the "coming and going" rule by demonstrating the existence of a "special hazard." *Ruckman* at paragraph two of the syllabus, citing *MTD Products* at 69, 572 N.E.2d 661, and *Littlefield v. Pillsbury Co.* (1983), 6 Ohio St.3d 389, 6 OBR 439, 453 N.E.2d 570. Under the "special hazard" exception, a fixed-situs employee, injured while commuting to or from work, may demonstrate that his injuries "arose out of" his employment by showing that his travel served a function of his employer's

business and created a risk that was distinctive in nature or *quantitatively greater than the risk common to the general public during commutes.* *Ruckman* at 124, 689 N.E.2d 917.

Specifically, in *Ruckman,* while traveling to remote drilling sites, employees of Cubby Drilling, Inc. were involved in automobile accidents. The Supreme Court of Ohio determined that the employees were fixed-situs employees, within the meaning of the "coming and going" rule, because their employment began once they arrived at their designated drilling site where they remained the entire workday, and they had no duties outside the site. *Id.* at 120, 689 N.E.2d 917. Although the court held that the employees' travel was "in the course of" their employment because they were engaging in the promotion and furtherance of their employer's business, in applying the "totality of the circumstances" test under the "arising out of" requirement, the court held that those factors were not satisfied. Specifically, the court determined that the accidents occurred away from the drilling sites, the employer did not control the roadways, and the employees' presence at the scene of the accidents did not benefit the employer. *Ruckman, supra,* 81 Ohio St.3d at 121–122, 689 N.E.2d 917.

Nonetheless, the Supreme Court of Ohio held that the combination of extenuating factors made the employees travel to these remote drilling sites a "special hazard," showing a sufficient causal connection to satisfy the "arising out of" requirement. *Ruckman* at 124, 689 N.E.2d 917. These extenuating factors included the constantly changing location of the remote drilling sites, the travel among the states of Ohio, Pennsylvania, and New York for assignments that lasted between three and ten days, and the significant distance between the remote sites and the employer's headquarters. *Id.* at 124–125, 689 N.E.2d 917. The court also factored in the employer's disregard of the significant distances when making new assignments, the minimal payment for distance traveled between the employer's headquarters and the remote sites that did not contemplate overnight expenses, and the employer's expectation that the employees commute daily back and forth from these remote sites. *Id.*

We now turn our attention to applying these principles to the instant case to determine whether summary judgment should be granted in favor of appellees. It is undisputed that appellant was commuting to a construction site in Geauga County, that appellant remained only at one site during an entire work day, and that appellant's duties commenced once he arrived at the site.

■ Therefore, as interpreted by the Supreme Court of Ohio in *Ruckman,* appellant undeniably fits the definition of a fixed-situs employee within the "coming and going" rule, despite the fact that it was possible for him to be assigned to a different construction site monthly, weekly, or even daily. Under Ohio law, the "coming and going" rule generally prohibits appellant, a fixed-situs

employee, from participating in the fund for injuries sustained while commuting to or from his assigned place of employment. However, as the Supreme Court of Ohio held in *Ruckman,* the inquiry does not end here, since appellant may still demonstrate that his injuries were sustained "in the course of" and "arising out of" his employment with Buckeye Masonry.

As to the "arising out of" requirement, the "totality of the circumstances" test must be applied. Although appellant's injuries arguably bear some relationship to his employment with Buckeye Masonry, looking at the nature and degree of this causal connection, there is not a sufficient causal connection between appellant's injuries and his employment with Buckeye Masonry. Specifically, Buckeye Masonry had absolutely no control over the other driver or the scene of the accident, nor did Buckeye Masonry benefit from appellant's presence at the scene because appellant was not on the clock. Nevertheless, as the Supreme Court of Ohio stated in *Ruckman,* the inability to satisfy the "totality of the circumstances" test does not automatically foreclose participation in the workers' compensation fund. The existence of a "special hazard" exception to the "coming and going" rule would satisfy the "arising out of" requirement.

Therefore, in determining whether appellant's travel to the assigned construction sites created a special risk that was distinctive in nature or greater than the risk that the general public faces during commutes to and from work, the following facts are undisputed. Appellant's travel was limited to a three-county area and appellant *never* faced the possibility of extended or remote travel or of an overnight stay at a hotel. On the other hand, in *Ruckman,* the Supreme Court of Ohio continuously emphasized that the combination of extenuating factors such as the remoteness of the drilling sites, the interstate travel and lengthy intrastate commute within a three-state area, and the overnight stays made the employees' travel a "special hazard."

Upon comparing the undisputed facts surrounding the instant case and the specific facts of *Ruckman,* we conclude that appellant's injuries do not "arise out of" his employment with Buckeye Masonry. Appellant's travel to and from his assigned work sites within a local three-county area on public roads does not constitute a "special risk." Such travel is the same commute as undertaken by the general public and exposed appellant to no greater risk than the general public. Accordingly, it is not necessary to proceed with an analysis concerning the "in the course of" requirement. In workers' compensation cases, when the undisputed evidence fails to establish an essential element of an injured employee's claim for participation in the workers' compensation fund, a reviewing court may sustain the trial court's entry of summary judgment. *Carrick v. Riser Foods* (1996), 115 Ohio App.3d 573, 578, 685 N.E.2d 1261.

Although we are sympathetic to the devastating injuries that appellant sustained, the workers' compensation system is not the proper venue for compensation of appellant's injuries. The risk of driving moderate distances on a public road is not in and of itself a special hazard because such a risk is common to all individuals who commute daily to work. As the Supreme Court of Ohio held in *Ruckman*, there must exist additional *extenuating factors* that make travel a "special hazard." Those factors do not exist here.

█ Even though the requirements under the Workers' Compensation Act should be liberally construed in favor of awarding benefits to injured employees, the facts of the instant case do not warrant an extension of *Ruckman*. The holding of *Ruckman* is limited to those extreme and factually distinguishable circumstances. An extension of *Ruckman* would open a pandora's box, further chipping away at the definition of compensable injury under the Ohio Workers' Compensation Act. Such an extension of *Ruckman* would allow participation in the fund for all coming and going injuries sustained by commuting employees regardless of the circumstances under which they occur. As stated above, the goal of the workers' compensation system is not payment for all injuries sustained by an employee; rather, the goal of the system is *proper* payment for *compensable* injuries.

Upon thoroughly considering the motions for summary judgment by both sides and construing the evidence in a light most favorable to the nonmoving party for each motion, there does not remain a genuine issue of fact for a formal trial.

Accordingly, reviewing the record in a light most favorable to appellant, reasonable minds can come to but one conclusion that is adverse to appellant. There is nothing left to litigate. As a matter of law, appellant was a fixed-situs employee whose injuries did not "arise out of" his employment with Buckeye Masonry because he was commuting to his place of employment on that day. The trial court correctly granted appellees' motion for summary judgment and properly denied appellant's motion for summary judgment. For the foregoing reasons, the judgment of the trial court is hereby affirmed.

*Judgment affirmed.*

CHRISTLEY, J., concurs.

WILLIAM M. O'NEILL, P.J., dissents.

WILLIAM M. O'NEILL, Presiding Judge, dissenting.

For the reasons that follow, I must respectfully dissent in this matter. The facts in this workers' compensation case are easily understood and do not appear

to be in dispute. Appellant was employed as a laborer on construction sites in a three-county area. On the day of his injury, he was assigned by his employer to work at a location which was twenty-nine miles from his home. Industrial Commission member, Patrick Gannon, got it right, when he wrote in his dissent:

"The employer argues that in this case, claimant was only eleven miles from his home when he was involved in the motor vehicle accident which rendered him a quadriplegic. I find that the actual distance traveled at the time of the accident to not be relevant to the inquiry. The Court in *Ruckman* [*Ruckman v. Cubby Drilling, Inc.* (1998), 81 Ohio St.3d 117, 689 N.E.2d 917] never enunciated how far the employees in that case were from their homes, the drilling site, or the employer's place of business. What the employer is basically arguing is that coverage under the workers' compensation system in Ohio depends on how far an employee has traveled when the injury is sustained. This is not a workable approach to coverage. If a claimant is required to drive a hundred miles to a fixed work site, which varies depending on the needs of the employer's customers, then the employee who is injured eleven miles from his home is not covered but the employee injured eleven miles from the work site is covered? This approach is not one which should be adopted, which is precisely the reason the focus is not solely on the distance traveled, but rather a totality of the circumstances including the consistently varying locations and duration of the work sites."

The facts in this matter are clearly identical to the facts in *Ruckman*, where the Supreme Court of Ohio held that the exposure of workers to both interstate and intrastate travel to arrive at the job site created a "special hazard" of employment. Therefore, it is clear that the Supreme Court of Ohio has clarified the law in the area of traveling laborers who are injured on the way to a job site far from home. The question to be resolved is whether this laborer, who was required to travel to a far away job site to satisfy his employer's needs, was subjected to a special hazard.

It is undisputed that this employee was required to travel by his employer. The job could not be performed until the workers arrived. It is further beyond question that he was seriously injured in a motor vehicle accident traveling to a site designated by his employer on a temporary basis. And it is, therefore, a question of fact whether this set of facts constitutes a "special hazard" as defined by the Supreme Court of Ohio. Reasonable minds could, and currently do, differ on the answer to that question. Therefore, as a matter of law, the granting of summary judgment was inappropriate.