FREEMAN, Admr., Appellant,

v.

BROOKS et al., Appellees.

[Cite as *Freeman v. Brooks*, 154 Ohio App.3d 371, 2003-Ohio-4814.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 02AP–1017.

Decided Sept. 11, 2003.

10.  Id.

Palmer, Volkema & Thomas, and Michael S. Miller; Otto Beatty Jr., and Associates, and Otto Beatty Jr., for appellant.

Ulmer & Berne, Timothy M. Fox and Jeffrey J. Sniderman, for appellees Inez Brooks and Batts Temporary Service, Inc.

Rendings, Fry, Kiely & Dennis, Joseph W. Gelwicks and Cynthia Chiaro, for appellee St. Paul Fire & Marine Insurance Company.

McCORMAC, Judge.

{¶ 1} Crystal Freeman, administrator of the estate of Clarence Freeman, deceased, plaintiff-appellant, commenced an action in the Franklin County Court of Common Pleas seeking damages against defendants-appellees, Batts Temporary Services, Inc. ("Batts"), and Inez Brooks. The action arose out of an automobile accident that occurred on October 11, 2002, in which plaintiff-decedent, Clarence Freeman, was fatally injured. At that time, Brooks was operating a large van owned by Batts in which Freeman was a passenger. Freeman and Brooks, along with 13 other passengers, were traveling to the

Airborne Express facility in Wilmington, Ohio, where their employer, Batts, had assigned them to work. Plaintiff alleged that Brooks and Batts had been negligent. No other cars were involved in the accident.

{¶ 2} Brooks and Batts moved for a summary judgment on the basis that they are immune from plaintiff's suit because of provisions of the Workers' Compensation Act, which provides immunity to employers and fellow employees pursuant to R.C. 4123.74 and 4123.741. It was undisputed that Batts participated in and paid into the Ohio Workers' Compensation system and was a complying employer. Plaintiff did not allege an intentional tort against either defendant.

{¶ 3} The trial court granted summary judgment to both defendants, finding that they were entitled to immunity under R.C. 4123.74 and 4123.741, and entered final judgment for them.

{¶ 4} Plaintiff also sought recovery against defendant-appellee, St. Paul Fire & Marine Insurance Company ("St. Paul"), on the basis that uninsured ("UM") and underinsured ("UIM") motorist coverage was applicable under its policy covering Batts and that Freeman is an insured person to whom the coverage applied. St. Paul moved for summary judgment on the basis that the policy limited UM/UIM coverage on the vehicle to $25,000. The trial court granted summary judgment to St. Paul, and plaintiff appeals that judgment as well.

{¶ 5} Plaintiff asserts the following assignments of error:

"1. The trial court erred to the substantial prejudice of the plaintiff-appellant in granting summary judgment to the defendants-appellees, Inez Brooks and Batts Temporary Services on the ground that they were immune from liability.

"2. The trial court erred to the substantial prejudice of the plaintiff-appellant in granting summary judgment to the defendants-appellees St. Paul Fire & Marine Insurance Company on the ground that, even though the policy issued by the defendant-appellee contained UM, UIM coverage by operation of law the policy still validly excluded the vehicles owned by the named insured from the definition of an uninsured or underinsured motor vehicle."

{¶ 6} Because the assignments of error arise out of the trial court's ruling on a motion for summary judgment, we review the disposition independently and without deference to the trial court's determination. *Brown v. Scioto Cty. Bd. of Commrs.* (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153. In conducting our review, this court applies the same standard as that employed by the trial court. *Maust v. Bank One Columbus, N.A.* (1992), 83 Ohio App.3d 103, 107, 614 N.E.2d 765, jurisdictional motion overruled (1993), 66 Ohio St.3d 1488, 612 N.E.2d 1244. In determining whether the trial court properly granted summary judgment, we must review the standard for granting summary judgment set forth in Civ.R. 56, as well as the applicable law. Summary judgment should be rendered only where

the evidence demonstrates that (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion, and that conclusion is adverse to the nonmoving party. Civ.R. 56(C); *State ex rel. Grady v. State Emp. Relations Bd.* (1997), 78 Ohio St.3d 181, 183, 677 N.E.2d 343.

{¶ 7} Batts has claimed immunity from damages at common law for Freeman's death based upon R.C. 4123.74. Brooks has claimed immunity from the common-law damage suit pursuant to R.C. 4123.741. The statutes read as follows:

"§ 4123.74   Immunity of complying employers.

"Employers who comply with section 4123.35 of the Revised Code shall not be liable to respond in damages at common law or by statute for any injury, or occupational disease, or bodily condition, received or contracted by any employee in the course of or arising out of his employment, or for any death resulting from such injury, occupational disease, or bodily condition occurring during the period covered by such premium so paid into the state insurance fund, or during the interval the employer is a self-insuring employer, whether or not such injury, occupational disease, bodily condition, or death is compensable under this chapter."

"§ 4123.741   Fellow employees' immunity from suit.

"No employee of any employer, as defined in division (B) of section 4123.01 of the Revised Code, shall be liable to respond in damages at common law or by statute for any injury or occupational disease, received or contracted by any other employee of such employer in the course of and arising out of the latter employee's employment, or for any death resulting from such injury or occupational disease, on the condition that such injury, occupational disease, or death is found to be compensable under sections 4123.01 to 4123.94, inclusive, of the Revised Code."

{¶ 8} Brooks and Batts seek summary judgment based upon the application of these immunity sections of the Revised Code, claiming that the death of Freeman occurred in the course of or arising out of the deceased employee's employment. Freeman's administrator, on the other hand, claims that Freeman's death did not arise out of his employment. Thus, plaintiff seeks partial summary judgment consisting of a declaration by the court that neither Batts nor Brooks is entitled to immunity from the common-law damage suit.

{¶ 9} For assignment of error one, the only disputed issue with respect to immunity is whether Freeman's death occurred within the scope of and arising out of his employment.

{¶ 10} There is no genuine issue of material fact in dispute concerning the issue of immunity. In his deposition, Sean Fore, vice-president of Batts, does not dispute the status of Freeman as an employee of Batts at the time of the accident herein. Batts provides light industrial temporary labor throughout Ohio and elsewhere. It has an office in Columbus and four other Ohio cities. Airborne, a business located in Wilmington, Ohio, is a client of Batts. Airborne is a parcel-package mover that operates three shifts and frequently needs temporary labor, particularly during the night shift. Batts entered into a contract with Airborne to supply temporary labor consisting of 10 to 60 persons at various times. Labor is supplied from the Columbus office at times, as well as from Dayton and other Ohio offices.

{¶ 11} Batts hires hourly employees, paying them around $7 an hour to provide this day labor. Both Freeman and Brooks, as well as the other 13 occupants of the van, were employed on this basis. Airborne paid Batts $11 an hour for the actual time that each Batts employee was at Airborne. In other words, Freeman and other workers were paid only for the actual time that they were engaged in labor at Airborne. Airborne maintained time cards for them, which provided the basis for their hourly pay from Batts. The employees were not paid for time spent in transportation from their homes to Airborne regardless of how they got there, which was either by driving themselves or by taking a van from Batts's office. Airborne paid fringe benefits costs, such as workers' compensation coverage.

{¶ 12} As stated before, employees could drive their own vehicles or arrange for their own transportation to Airborne. Batts provided an additional choice by maintaining four 15–passenger vans to transport workers. If a day laborer chose to take the van, he or she paid Batts $4 for round-trip transportation from Batts's Columbus office. The workers arranged for their own transportation to Batts's office. They were not compensated for times spent during either type of transportation and agreed to have the costs of the round-trip van transportation deducted from their daily wages if they chose to use the van. Generally, they were paid at the end of each day. This was the situation that applied regardless of where the actual work or client was located. Freeman had worked at about four different job locations during his relatively brief tenure as a day laborer with Batts, generally all within a relatively close area to Columbus. The use of Columbus workers in Wilmington occurred because closer offices could not supply enough temporary workers. Batts's vice-president testified in his deposition that the transportation was strictly permissive and was offered as a service to the day laborers who otherwise would have to arrange their own transportation.

{¶ 13} The trial court, in its decision, analyzed cases pertinent to the issue of whether Freeman's death occurred within the scope of and arising out his employment. That analysis is as follows:

"In *Ruckman v. Cubby Drilling Co., Inc.* (1998), 81 Ohio St.3d 117 [689 N.E.2d 917], the Ohio Supreme Court examined a factual situation similar to that facing this Court. In *Ruckman,* employees were injured in traffic accidents that occurred during travel from their homes to remote locations where Cubby had assigned its employees to drill wells. The employees sought and were granted workers' compensation benefits, and Cubby challenged such benefits on appeal, arguing that the employees' accidents did not occur in the course of or arising out of the employment relationship. The Court found that the employees were engaged in work that had to be done on Cubby's customer's premises and that the employees' travel to and from their remote work sites was in the course of their employment. The Court also applied the special hazard rule to conclude that the employees' travel arose out of their employment.

"Relying on the coming-and-going rule, Plaintiff herein argues that Clarence Freeman's injuries did not occur in the course of and arising out of his employment by Defendant Batts. Generally, an employee with a fixed place of employment who is injured while traveling to or from his place of employment is not entitled to participate in the Workers' Compensation fund. *MTD Products, Inc. v. Robatin* (1991), 61 Ohio St.3d 66, 68 [572 N.E.2d 661]. In determining whether an employee is a fixed-situs employee, the focus is on whether the employee commences his substantial employment duties only after arriving at a specific and identifiable place designated by his employer, even if the employee may be periodically reassigned to a different location. *Ruckman,* 81 Ohio St.3d at 120 [689 N.E.2d 917], citing *Industrial Commission v. Heil* (1931), 123 Ohio St. 604, 606–7 [176 N.E. 458]. In *Ruckman,* the Supreme Court held that the riggers were fixed situs employees despite the periodic relocation of job sites because the riggers had no duties to perform away from the drilling sites to which they were assigned. Id. Like the riggers, Mr. Freeman only performed services for Batts in locations other than Batts's offices, for clients of Batts. (Fore Dep. p. 19). Accordingly, Mr. Freeman was a fixed-situs employee. However, that conclusion does not end the Court's inquiry.

"An employee may avoid the force of the coming-and-going rule where he can nevertheless demonstrate that he received an injury in the course of and arising out of his employment. *Id.* at 120 [689 N.E.2d 917], citing *MTD Products,* 61 Ohio St.3d 66 [572 N.E.2d 661]. While acknowledging that '[i]n the normal context, an employee's commute to a fixed work site bears no meaningful relation to his employment contract and serves no purpose of the employer's business,' the Ohio Supreme Court held 'that is not the case, however, where * * * the employee travels to the premises of one of his employer's customers to satisfy a business obligation.' *Id.* at 121 [689 N.E.2d

917]. Plaintiff concedes that Mr. Freeman's death occurred in the course of his employment. (Plaintiff's Reply p. 4).

"Before it may conclude that Defendants Batts and Brooks are entitled to immunity under R.C. 4123.74 and 4123.741, this Court must determine whether Mr. Freeman's death arose out of his employment. The arising out of employment requirement contemplates a causal connection between the injury and the employment. *Fisher v. Mayfield* (1990), 49 Ohio St.3d 275, 277–278 [551 N.E.2d 1271]. Courts consider the totality of the circumstances to determine whether there exists a sufficient causal connection between the employee's injury and his employment. See *id.*; *Lord v. Daugherty* (1981), 66 Ohio St.2d 441 [20 O.O.3d 376, 423 N.E.2d 96]. Although, in *Lord,* the Court set forth three primary factors consideration, application of those factors to the present scenario does not yield the conclusion that a sufficient causal connection exists between Mr. Freeman's injuries and his employment. Nevertheless, the Court's inquiry does not end.

" 'If an employee's injury occurs in the course of his employment, yet fails the *Lord* three-part test for causation, a fixed-situs employee may, nevertheless, demonstrate the required causal connection between employment and injury under the special hazard rule of causation.' " *Ruckman,* 81 Ohio St.3d at 124, 689 N.E.2d 917. 1. Under the special hazard rule, an employee will be entitled to workers' compensation benefits when the employment creates a special hazard and the injuries are sustained because of that hazard. *Littlefield v. Pillsbury Co.* (1983), 6 Ohio St.3d 389 [6 OBR 439, 453 N.E.2d 570], syllabus ¶ 2. Plaintiff contends that Mr. Freeman was not exposed to any special hazard so as to avoid application of the coming-and-going rule.

"In *Ruckman,* the Ohio Supreme Court held that multiple factors combined to make the riggers' travel to temporary drilling sites a special hazard of their employment. *Id.* Those factors included the temporary nature and constantly changing location of the riggers' fixed work sites and the distance of the riggers' commutes to the remote work sites. Although Plaintiff argues that none of the factors that compelled the Supreme Court to apply the special hazard rule in *Ruckman* are present herein, this Court finds that each of the factors also weighs in favor of the conclusion that the special hazard exception applies to the instant case.

"Like the Cubby riggers, Batts's employees' work sites changed frequently. (Fore Dep. pp. 12, 20). Mr. Freeman's pay stubs indicate that Mr. Freeman worked for Batts in at least four different locations other than Airborne in the month prior to his death. (See Fore Dep. pp. 37–38; Exh. 2, 3). Batts's employees did not know the location of future assignments and, unlike the

typical fixed-situs employee, were unable to fix their commute in relation to the remote work sites. In *Ruckman,* the Ohio Supreme Court stated:

" 'For most employees, commuting distance to a fixed work site is largely a personal choice. Any increased risk due to a longer commute is due more to the employee's choice of where he or she wants to live than the employer's choice of where it wants to locate its business. Accordingly, it is usually not the employment relationship that exposes an employee to the greater risk associated with a long commute.' 81 Ohio St.3d at 125 [689 N.E.2d 917]. "In the instant case, although Batts' employees could control the distance between their homes and Batts' dispatching office, where the employees received their job assignments and time tickets for the day, they were unable to control the commuting distance to the remote work sites to which Batts assigned them. Mr. Freeman was not injured on his commute from home to the Batts dispatch office, but on his commute from the Batts dispatch office, where Mr. Freeman had been given his job assignment, to the remote location where Mr. Freeman was to fulfill that assignment. Here, like in *Ruckman,* the employment relationship dictated that the Batts employees undertake daily and lengthy commutes from the dispatch office to remote work sites, thereby significantly increasing their exposure to traffic risks associated with highway travel. Accordingly, this Court finds that Mr. Freeman's travel to remote work sites constituted a special hazard of his employment, involving risk distinctive in nature or quantitatively greater than the risk the general public faced during commutes to and from work. Thus, the Court finds that Mr. Freeman's death arose out of his employment with Batts."

■ {¶ 14} We agree with the trial court's analysis, as conceded by plaintiff, that Freeman's death occurred in the course of his employment and that there was not a sufficient causal connection between Freeman's death and his employment. The critical issue, however, is whether a fixed-situs employee (as Freeman was) in relation to his employment at Airborne had the sufficient causal connection between employment and injury under the "special hazard rule of causation." *Ruckman,* supra, 81 Ohio St.3d at 124, 689 N.E.2d 917. Given the special-hazard rule, an employee is entitled to workers' compensation benefits when the employment creates a special hazard and the injuries are sustained because of that hazard. *Littlefield v. Pillsbury Co.* (1983), 6 Ohio St.3d 389, 6 OBR 439, 453 N.E.2d 570, paragraph two of the syllabus.

{¶ 15} It seems paradoxical that Batts, which made the travel arrangements to avoid bearing the costs of the temporary workers drawing wages or being compensated before they arrived and signed in at the client's workplace, now seeks to undo its own handiwork, at least in part, by arguing that, in doing so, it placed the workers under a special hazard of injury and, thus, the employees

were entitled to workers' compensation under the *Ruckman* rule. Of course, its real object is to obtain immunity from common-law liability. Had the accident and death been caused by the negligence of a third party, one can rest assured that the arguments would be reversed, as in the *Ruckman* case, and its progeny, where the workers' goal is to recover workers' compensation benefits and the employer's goal is to avoid paying workers' compensation.

{¶ 16} But such is life and law where self-interest frequently takes precedence over principle.

{¶ 17} Nevertheless, it is our obligation to determine the status of Freeman, regardless of the transient circumstances and whose ox is being gored.

{¶ 18} As stated before, we are charged with reviewing the disposition independently, without deference to the trial court's decision. The sole issue based on *Ruckman,* supra, is whether Freeman's transportation arrangement created a special hazard causing his death. If Freeman was exposed only to the commuting hazards common to the public, then under the coming-and-going rule, the requisite causal connection between injury and the employment does not exist.

{¶ 19} The circumstances for finding a greater hazard of commuting are substantially weaker in this case than in *Ruckman.* In *Ruckman,* workers were sent from their homes to drill sites a substantial distance away. They were paid a per diem based on the distance of the drill site from the home office. Their commutes involved long distances of highway travel to remote sites, often with overnight stays. That situation involved far more exposure to highway risks than encountered by daily commuters.

{¶ 20} In this case, the longest commute appeared to be one hour or less, something experienced daily by many members of the public, and Batts's temporary workers, like Freeman, were free to accept or decline any job. Since the temporary workers received no pay, only an expense, for transportation, it seems obvious that their commute time and expenses must be limited to short distances. The workers were being paid a low hourly rate of not more than $7 an hour. The economics clearly indicate that the workers, like Freeman, would rarely, if ever, be used for long distance trips.

{¶ 21} In *Barber v. Buckeye Masonry & Constr. Co.* (2001), 146 Ohio App.3d 262, 765 N.E.2d 951, the Eleventh District Court of Appeals held that an injured worker did not meet the special-risk test when he was injured in an automobile accident traveling to and from a construction site 29 miles away. In that case, Barber was assigned to various sites within a three-county area. He provided his own transportation, and his work day began and ended at the assigned sites. The court found that the existence of a "special hazard" to overcome the coming-and-going rule to obtain a causal connection should be a rare circumstance not

shown in *Barber*, whose commute was one regularly encountered by commuting workers.

{¶ 22} The case herein virtually parallels *Barber*, except that Freeman chose to pay to take the van rather than provide his own transportation. We find no "special hazard" not common to the public in general. Workers' compensation coverage did not apply because there was no casual connection.

{¶ 23} Plaintiff's first assignment of error is sustained. Defendants do not have immunity, since the accident did not arise out of Freeman's employment.

{¶ 24} Plaintiff's second assignment of error is overruled. St. Paul provided liability insurance in the sum of $1,000,000 that covers defendants for damages arising from Freeman's death. Therefore, defendants were neither uninsured nor underinsured.

{¶ 25} Plaintiff's first assignment of error is sustained, and the second assignment of error is overruled. The judgment of the trial court is reversed, and this case is remanded to the trial court for further procedure consistent with this opinion.

Judgment reversed
and cause remanded.

PETREE, P.J., and BOWMAN, J., concur.

JOHN W. MCCORMAC, J., retired, of the Tenth Appellate District, was assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.