[Cite as *Love v. Columbus*, 2019-Ohio-620.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Carlton Love, | : | |
| Plaintiff-Appellant, | : | |
| | | No. 17AP-696 |
| v. | : | (C.P.C. No. 16CV-3490) |
| City of Columbus, et al. | : | (REGULAR CALENDAR) |
| Defendants-Appellees. | : | |

_____

D E C I S I O N

Rendered on February 21, 2019

_____

**On brief:** *Law Office of John C. Camillus, LLC*, and *John C. Camillus* for appellant.

**On brief:** [*Zachary M. Klein*], City Attorney, *Wendy S. Kane,* and *Susan E. Thompson,* for appellees.

_____

APPEAL from the Franklin County Court of Common Pleas

BRUNNER, J.

{¶ 1} Plaintiff-appellant, Carlton Love, appeals from a Franklin County Court of Common Pleas' judgment which granted summary judgment motion to defendants-appellees, the City of Columbus ("the city") and Tatyana Arsh (collectively, "appellees") on all of Love's claims for discrimination and retaliation. For the following reasons, we reverse the judgment of the trial court.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} Love is an African-American who began working for the city in 1992 as an engineer aide. Subsequently, he was promoted to a pipeline locator and was responsible for locating underground utility lines. Requests to mark utility lines are commonly referred to as "tickets" or "OUPS tickets." (Sarff Aff. at ¶ 3, attached to Apr. 25, 2017 Mot. For Summ. Jgmt.) Love was a member of the American Federation of State, County, and Municipal Employees, Ohio Council 8, Local 1632 ("Union"). Cheryl Roberto was the Director of

Public Utilities ("the department") in 2006 and she moved the department to the Ohio Utilities Protection Service ("OUPS"). At that time, Love alleges that Roberto met with 50-60 employees and promised them a pay raise. Roberto told Love that even though he would be responsible for more job duties because he was responsible for marking water, sewer, and electric lines more than just water lines as previously, he would receive commensurately more pay.

{¶ 3} Subsequently, Roberto left her employment and defendant, Tatyana Arsh, became the Director of Public Utilities. Love learned he would not be receiving a pay raise other than the negotiated pay raises pursuant to the collective bargaining agreement. Love testified in his deposition that he complained to Deputy Director Mark Kouns and the city's Equal Employment Opportunity ("EEO") officer, Dr. Matthews, two times each, that he felt he was not receiving the promised raises because of his race.

{¶ 4} Love testified that in 2008, his supervisor, Bill Stover, threatened him and used a derogatory racial term. After an investigation, Stover was charged with violations of City of Columbus Central Work Rules 2, 8, and 10. Stover resigned on December 8, 2008.

{¶ 5} Prior to Love's complaint against Stover, the department began receiving complaints from inspectors and contractors that Love was not properly marking utility lines at various job sites. A water line was hit and damaged, costing approximately $50,000 to repair. Disciplinary charges were filed against Love for violating Central Work Rules 1, 6, and 7 (Dishonesty, Insubordination, and Neglect of Duty). In July 2008, Love was charged with violating Central Work Rules 6 and 7 (Insubordination and Neglect of Duty) because he failed to complete a work ticket. Later that month, Love was again charged with violations of Central Work Rules for failure to properly mark a water line that was hit and damaged.

{¶ 6} Love entered into a Last Chance Agreement on October 8, 2008 and admitted engaging in the conduct described in the three violations. The Last Chance Agreement provides that if Love was found guilty of violating another work rule during the three years the Last Chance Agreement was in effect, his employment would be terminated.

{¶ 7} In September 2010, Love's supervisor began receiving complaints from inspectors and contractors regarding Love not marking utility lines properly. There were five separate incidents involving a mismarked line or incomplete marking. After an

investigation, charges were filed against Love for violating Central Work Rules 1, 6, and 7 (Dishonesty, Insubordination, and Neglect of Duty).

{¶ 8}   A city Labor Relations Hearing Officer conducted a disciplinary hearing on November 9, 2010.  As a result of the hearing, the Labor Relations Hearing Officer found Love guilty of the charges and, therefore, ordered Love's employment terminated, effective November 19, 2010.

{¶ 9}   The Union filed a grievance to challenge the work rule violations.  On January 10, 2011, a Step 2 grievance hearing was held, conducted by an employee of the city. Following the hearing, the hearing officer found Love violated the work rules and upheld his termination on January 18, 2011.  The Union did not pursue any further appeals.

{¶ 10} Love filed a complaint against the city and Tatyana Arsh in the Franklin County Court of Common Pleas alleging race discrimination and retaliatory discharge. Love dismissed the case and refiled it on April 11, 2016.  He filed an amended complaint, alleging race discrimination and retaliation.  The city and Arsh filed a joint motion for summary judgment.  The trial court granted the motion for summary judgment on August 31, 2017.

## II. ASSIGNMENTS OF ERROR

{¶ 11} Love filed a timely notice of appeal and raised the following assignment of error for our review:

> The Trial Court erred in granting summary judgment for the Defendants on Plaintiff's claim for race discrimination.

## III.  STANDARD OF REVIEW

{¶ 12} The trial court granted appellees' motion for summary judgment under Civ.R. 56(C), which requires that:

> Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

{¶ 13} In *Rose v. Ohio Dept. of Rehab. & Corr.*, 173 Ohio App.3d 767, 2007-Ohio-6184, ¶ 18 (10th Dist.), we described our standard of review for motions for summary judgment:

> Appellate review of summary judgment motions is de novo. *Helton v. Scioto County Bd. of Comm'rs.* (1997), 123 Ohio App.3d 158, 162, 703 N.E.2d 841. When reviewing a trial court's decision granting summary judgment, we conduct an independent review of the record, and the appellate court "stands in the shoes of the trial court." *Mergenthal v. Star Banc Corp.* (1997), 122 Ohio App.3d 100, 103, 701 N.E.2d 383.

When we review a trial court's grant of summary judgment we use the same standard of review as the trial court used. *Freeman v. Brooks*, 154 Ohio App.3d 371, 2003-Ohio-4814, ¶ 6 (10th Dist.), citing *Maust v. Bank One Columbus, N.A.*, 83 Ohio App.3d 103, 107 (10th Dist.1992), *jurisdictional motion overruled*, 66 Ohio St.3d 1488 (1993). Accordingly, our appellate review of summary judgment is in effect a second review according to the same standards applied by the trial court and based on the record and the law.

{¶ 14} To prevail on a motion for summary judgment, the moving party must demonstrate that when the evidence is construed most strongly in favor of the nonmoving party, no genuine issue of material fact remains to be litigated and that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C); *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64 (1978). A genuine issue of material fact exists unless it is clear that reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party. *Williams v. First United Church of Christ*, 37 Ohio St.2d 150, 151 (1974). Summary judgment is a procedural device to terminate litigation, so it must be awarded cautiously, with any doubts resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358-59 (1992).

{¶ 15} A party seeking summary judgment for the reason that a nonmoving party cannot prove its case bears the initial burden of informing the trial court of the basis for the motion and it must identify those parts of the record that demonstrate the absence of a genuine issue of material fact on the elements of the nonmoving party's claims. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-93 (1996). The moving party does not discharge this initial burden under Civ.R. 56 by simply making a conclusory allegation that the nonmoving party has no evidence to support its claims. *Id.* Rather, the moving party must affirmatively demonstrate by affidavit or other evidence allowed by Civ.R. 56(C) that the nonmoving party has no evidence to support its claims. *Id.* If the moving party satisfies its initial burden, then the burden shifts to the nonmoving party to set forth specific facts showing there is a genuine issue for trial. Civ.R. 56(E); *Dresher* at 293. The nonmoving party may

not rest on the mere allegations or denials of its pleadings, but must respond with specific facts showing there is a genuine issue for trial. Civ.R. 56(E); *Dresher* at 293. If the nonmoving party does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party. *Id.*

## IV. LAW AND DISCUSSION

{¶ 16} Love argues that the trial court erred in granting summary judgment to the city and Arsh. R.C. 4112.02 prohibits discrimination based on a plaintiff's race and provides:

> It shall be unlawful discriminatory practice:
>
> (A) For any employer, because of the race, color, religion, sex, military status, national origin, disability, age or ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment.

{¶ 17} The Supreme Court of Ohio has explained that discrimination actions under federal and state law require the same analysis. *Plumbers & Steamfitters Joint Apprenticeship Commt. v. Ohio Civ. Rights Comm.*, 66 Ohio St.2d 192, 196 (1981). Thus, Ohio courts may look to both federal and state courts' statutory interpretations of both federal and state statutes when determining the rights of litigants under state discrimination laws. *Dautartas v. Abbott Laboratories*, 10th Dist. No. 11AP-706, 2012-Ohio-1709, ¶ 24, citing *Miller v. Potash Corp. of Saskatchewan, Inc.*, 3d Dist. No. 1-09-58, 2010-Ohio-4291, ¶ 16.

{¶ 18} A plaintiff must prove discriminatory intent by either direct or indirect evidence. *Gismondi v. M & T Mtge. Corp.*, 10th Dist. No. 98AP-584 (Apr. 13, 1999). Absent direct evidence of discrimination, a plaintiff may indirectly establish discriminatory intent using the analysis promulgated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and this is the basis for analyzing discrimination claims under both state and federal law. *Gismondi.*

{¶ 19} A plaintiff claiming discrimination in employment must first demonstrate a prima facie case of discrimination. *McDonnell Douglas* at 802. A plaintiff may directly establish a prima facie case of discrimination by presenting evidence of any nature to show that adverse employment action taken by his or her employer was more likely than not

motivated by discriminatory intent. *Mauzy v. Kelly Servs., Inc.*, 75 Ohio St.3d 578, 583 (1996). A plaintiff may indirectly establish a prima facie case of discrimination "by showing that: (1) he or she was a member of a statutorily protected class; (2) he or she was subjected to an adverse employment action; (3) he or she was qualified for the position; and (4) he or she was replaced by, or that the removal permitted the retention of, a person not belonging to the protected class." *Tessmer v. Nationwide Life Ins. Co.*, 10th Dist. No. 98AP-1278 (Sept. 30, 1999), citing *Kohmescher v. Kroger Co.*, 61 Ohio St.3d 501, 504 (1991).

{¶ 20} Termination of employment is considered to be an adverse employment action. *Crady v. Liberty Natl. Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir.1993). Establishing a prima facie case " ' creates a presumption that the employer unlawfully discriminated against the employee.' " *Williams v. Akron*, 107 Ohio St.3d 203, 2005-Ohio-6268, ¶ 11, quoting *Texas Dept. of Comm. Affairs v. Burdine*, 450 U.S. 248, 254 (1981).

{¶ 21} If a plaintiff establishes a prima facie case, a burden shifting occurs, causing the employer to articulate some legitimate, nondiscriminatory reason for the adverse employment action. If the employer articulates such a reason for the adverse action, the burden shifts back to the plaintiff to show "that the proffered reason was not the true reason" for the adverse employment action. *Burdine* at 256. This has been referred to as a "pretense" or pretext for the offending action. *See, e.g., Bogdas v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 09AP-466, 2009-Ohio-6327. "Although the presumption created by the prima facie case disappears once the employer meets its burden of production, 'the trier of fact may still consider the evidence establishing the plaintiffs prima facie case "and inferences properly drawn therefrom * * * on the issue of whether the defendant's explanation is pretextual." ' " *Nelson v. Univ. of Cincinnati*, 10th Dist. No. 16AP-224, 2017-Ohio-514, ¶ 35, quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000), quoting *Burdine* at 255, fn. 10.

{¶ 22} Specifically, in the case of discriminatory discharge, to make a prima facie case, a plaintiff must show (1) he or she is a member of a racial minority; (2) he or she is qualified for the job; (3) he or she was discharged; (4) the position from which he or she was removed remains open or he or she was replaced by a person outside the protected class. *Plumbers & Steamfitters* at 197.

{¶ 23} The trial court found that Love had failed to present a prima facie case of discriminatory discharge under the standard determined by the Supreme Court of Ohio. *Id.* The trial court determined that Love could satisfy the first three elements of his prima facie case but could not satisfy the last element because the evidence was insufficient to support the conclusion that a person outside the protected class replaced him.

{¶ 24} Following *Lilley v. BTM Corp.*, 958 F.2d 746 (6th Cir.1992), questioned on other grounds, *Janette v. Am. Fid. Group, Ltd.*, 298 Fed.Appx. 467 (6th Cir.2008), the trial court found that Love was not replaced. In *Lilley*, the Sixth Circuit Court of Appeals found that there was insufficient evidence to establish a prima facie case of age discrimination because the plaintiff was not replaced. A downturn in the market for the company's products occurred and several orders were canceled which supported plaintiff's termination. Plaintiff's duties were absorbed by the remaining employees. However, nine months after his termination, the company's business had recovered and increased and another employee was hired. The Sixth Circuit determined that this did not constitute a replacement within the age-discrimination context, and the plaintiff did not establish the fourth prong of his prima facie case.

{¶ 25} Love provided evidence for his prima facie case. He is an African-American whose employment was terminated, and he had been performing the job since the early 1990s. The trial court only focused on the fourth prong of the prima facie case and determined that Love failed to establish that he was replaced by someone outside the protected class. Initially, Love argues the trial court erred in this determination because appellees did not make this argument in their motion for summary judgment but, rather, argued it in their reply. Further, Love argues that appellees admitted in the responses to his discovery interrogatories that he was replaced. When asked whether the city hired any individual to replace Love, the answer provided was "Matthew E. Claypool, Caucasian, male, was hired effective 8/8/11." (May 2, 2017 Defs.' Resps. to Interrogs. at Interrog. No. 13.) Love argues that this response admits he was replaced and sets forth the fourth prong of his prima facie case.

{¶ 26} Appellees' response to Love's discovery interrogatories is an admission that Love was replaced by someone outside his protected class. But the answer provides that Love's replacement was hired nine months after Love's employment terminated. The trial

court applied *Lilley* and found that since Love's replacement was hired nine months after his employment was terminated, he was not replaced.  Love argues that *Lilley* is distinguishable because the defendant in *Lilley* denied that the plaintiff had been replaced, and the terminated employee's employment was attributable to a downturn in the market.  Then, nine months later, after the market rebounded, an employee outside the protected class was hired.  Love argues that this is a meaningful distinction because here, appellees admitted they hired someone outside the protected class.  Here, appellees' admission that Love was replaced established the fourth prong of Love's prima facie case, but the question of whether *Lilley* should apply to these facts creates genuine issue of material fact.  That is, the basis for not filling Love's position for nine months was subject to a factual determination not well-settled by evidence in the record.  And this was material to whether he satisfied the fourth element of a prima facie case of discriminatory discharge by the city and Arsh.

{¶ 27}  While the trial court also found that Love could not meet the fourth prong of his discrimination claim for disparate treatment,[1] he does not make this argument as part of this appeal nor argue in response before the trial court on summary judgment.  He focused his arguments on the fact that he was replaced with an individual not in his protected class.  The trial court did address the argument concerning disparate treatment, from what we can tell, because defendants raised it in their motion for summary judgment.  But because that aspect of the trial court's decision is not raised as error by Love on appeal, we do not address this issue as part of our decision.  We note that we need not address it if any material issue of fact remains concerning any basis for establishing a prima facie case, the evidence being construed in favor of the moving party under Civ.R. 56(C).  We thus return to whether any material issue of fact remains concerning the issue of whether Love was replaced with an individual not in his protected class.

{¶ 28} According to our review of the record, the trial court spent a significant amount of time focusing on disparate treatment issues, including impermissibly weighing

---

[1] Love repeatedly testified in his deposition that other line locators engaged in the same conduct as the conduct for which he was terminated and they were not disciplined.  Although Love could not identify any particular individual, he testified that all the line locators did the same things and had made mistakes, yet he was disciplined while others were not disciplined.  Although Love was working under a Last Chance Agreement and there is no evidence that other line locators were working under a Last Chance Agreement, he argued that these other line locators were not disciplined at all.

evidence and necessarily making credibility determinations concerning the circumstances of the other comparable, non-protected persons on the issue of disparate treatment. It discounted Love's statements that other line locators were treated better because he could not specifically name those persons and, therefore, found that Love presented no proof regarding the fourth prong of the prima facie analysis. The trial court credited appellees' statements by affidavit that two Caucasian utility line locators were terminated or resigned after violating rules while working under a Last Chance Agreement. The trial court appears to not have considered all the evidence or to have determined some more credible than other evidence, impermissibly weighing in reaching summary judgment for appellees.

{¶ 29} But more importantly, the trial court did not construe the evidence in Love's favor as the nonmoving party. While this would be permissible at trial, it is not permissible on summary judgment. *Nationwide Mut. Ins. Co. v. Am. Elec. Power*, 10th Dist. No. 08AP-339, 2008-Ohio-5618, ¶ 29, citing *Santho v. Boy Scouts of Am.*, 168 Ohio App.3d 27, 2006-Ohio-3656, ¶ 16 (10th Dist.) As we review the record, the trial court erred when it determined Love failed to make a prima facie case for employment discrimination. We hold that a material issue of fact exists concerning whether the nine-month gap between Love's termination and the hiring of his non-protected class replacement is subject to the same analysis of factors such as market conditions in *Lilley.* Because the city is a government entity for which there was not evidence the city was subject to market conditions, such as for a fee-based revenue structure, there is significant doubt about whether the trial court could apply *Lilley* in determining Love did not meet the fourth requirement in proving discriminatory discharge.

{¶ 30} Since we hold there is a material issue of fact on whether Love established a prima facie case of discriminatory discharge, summary judgment is inapposite. We do not reach issues relating to burden shifting to the employer or pretextual based reshifting of the burden to Love. Such issues remain premature. Having found that the trial court erred in its summary determination that Love did not present a prima facie case of discriminatory discharge, we thus sustain Love's sole assignment of error, and Love's other arguments are moot.

{¶ 31} Our decision addresses only Love's sole assignment of error in which he did not raise any issues about his initial retaliation claim involving disparate treatment. We

simply point out the problems we see in the record concerning how the trial court reached its summary judgment determination on that aspect of appellees' summary judgment motion.

## V. CONCLUSION

{¶ 32} The Franklin County Court of Common Pleas erred in granting appellees' motion for summary judgment because a material fact exists as to why Love's position was kept open for nine months before Arsh and the city hired someone to replace him who was not a member of a protected class. Thus, the trial court was not in a position to grant summary judgment for failure to make a prima facie case of discriminatory discharge. Accordingly, we sustain Love's sole assignment of error and reverse the judgment of the Franklin County Court of Common Pleas on that basis.

*Judgment reversed and*
*cause remanded.*

HORTON, J., concurs.
SADLER, J., dissents.

SADLER, J., dissenting.

{¶ 33} Because I believe the dispositive issue in this case is whether the trial court erred as to evidence of pretext, I do not agree with the majority decision that it is premature to address the next steps of the *McDonnell Douglas* burden-shifting analysis.

{¶ 34} This court's precedent permits granting summary judgment based on the pretext step of the *McDonnell Douglas* burden-shifting analysis regardless of whether the appellant succeeded in establishing a prima facie case. *See, e.g., Housden v. Wilke Global, Inc.*, 10th Dist No. 17AP-420, 2018-Ohio-3959, ¶ 66; *Crase v. Shasta Beverages, Inc.*, 10th Dist. No. 11AP-519, 2012-Ohio-326, ¶ 13; *Kundz v. AT&T Solutions, Inc.*, 10th Dist. No. 05AP-1045, 2007-Ohio-1462, ¶ 30; *Morrissette v. DFS Servs., LLC*, 10th Dist. No. 12AP-611, 2013-Ohio-4336, ¶ 33. Furthermore, the parties raised the issue of evidence of pretext to the trial court, the trial court ruled on pretext as an alternative basis to find summary judgment in favor of appellees, and appellant does not raise evidence of appellees hiring a replacement who was not a member of a protected class (his remaining prima facie argument) as evidence of pretext.

{¶ 35} Considering the above, I believe addressing the pretext prong of the *McDonnell Douglas* burden-shifting analysis is necessary to resolve the appeal. Because the majority holds otherwise and does not address the issue of pretext, I respectfully dissent.

_____