THE STATE OF OHIO, APPELLEE, *v.*
DAVIS, APPELLANT.

(No. 11077—Decided August 24, 1983.)

*Mr. Lynn C. Slaby,* prosecuting attorney, for appellee.

*Mr. Peter T. Cahoon,* for appellant.

GEORGE, J. Defendant-appellant, Lee Andrew Davis, was arrested and indicted for the February 14, 1980 killing of gas station attendant George Driscoll. During his trial for aggravated murder and aggravated robbery, the defendant raised the issue of his competency to stand trial. After a hearing and evaluation, the trial court found Davis was incompetent to stand trial and would probably not become competent within one year under R.C. 2945.38(C).

The trial court ordered an affidavit to be filed with the probate court to have Davis involuntarily hospitalized pursuant to R.C. Chapters 5122 and 5123.[1] Thereafter, the trial court dismissed the indictment against Davis under the authority of R.C. 2945.38(C) and (G). Davis was then confined to the Massillon State Hospital.

On July 15, 1982, Davis was reindicted on two counts, aggravated murder and aggravated robbery, both arising out of the February 14, 1980 shooting of George Driscoll. Davis moved to quash the new indictment pursuant to Crim. R. 12(C), arguing that he had not been released or found to be competent prior to the reindictment. The trial court denied the motion to quash.

Davis was re-evaluated and found competent to stand trial. He was then convicted of aggravated murder and ag-

---

[1] Davis was found mentally ill (or mentally retarded) and subject to hospitalization pursuant to R.C. 2945.38 (see R.C. 5122.01 and 5123.01). All references herein to the finding of mental illness include the trial court's coincidental finding of mental retardation.

gravated robbery by a jury. He presents three assignments of error, only one of which this court now considers.

### Assignment of Error 1

"The trial court committed prejudicial error by denying defendant-appellant's motion to quash the indictment in this case, which indictment was returned and filed while defendant-appellant was under an adjudication by the trial court of incompetency to stand trial."

The dismissal of an indictment pursuant to R.C. 2945.38(C) and (G) bars further criminal proceedings unless the conditions of R.C. 2945.38(H) are satisfied. Davis alleges that subsection (1) of R.C. 2945.38(H) has not been fulfilled. In essence, subsection (H)(1) requires the defendant to be "released" from confinement or found not to be mentally ill prior to the commencement of further criminal proceedings.

In deciding to reindict Davis, the state relied on information obtained by way of a telephone conversation between the prosecutor and the administrator of the Massillon State Hospital. The prosecutor stated at the hearing on the motion to quash that the hospital administrator had indicated to him that Davis was soon to be classified as a voluntary patient. The prosecutor, therefore, concluded that as a voluntary patient Davis would be able to cause himself to be released from the hospital. Thus, the prosecutor sought reindictment.

Davis contends that the prosecutor's statements, regarding his status and the basis for reindictment, were inadmissible hearsay. Davis further contends that there was no change in circumstances which would bring him within R.C. 2945.38(H) and make him amenable to reindictment.

The statement made by the prosecutor to the trial court was insufficient to prove Davis' status on July 15, 1982. Objection was made. Hearsay cannot be con-sidered as proof of the defendant's status for purposes of reindictment under R.C. 2945.38(H).

The issue is whether Davis had, in fact, attained the necessary status for reindictment under R.C. 2945.38(H). However, the record does not contain sufficient evidence for a judicial determination of Davis' status on July 15, 1982. Therefore, this matter is remanded to the trial court for a factual determination. There must be evidentiary proof, not hearsay. Should the trial court find that Davis had not attained the necessary status under R.C. 2945.38(H), then the indictment which was filed and all subsequent proceedings are erroneous and should be vacated.

Inasmuch as the word "released," as used in R.C. 2945.38(H)(1), is not statutorily defined, this court must give meaning to the word. In doing so, such definition must be limited to the confines of the intention and interrelationship of R.C. 2945.38(H) with R.C. Chapters 5122 and 5123.

R.C. Chapters 5122 and 5123 were enacted not for punishment but to provide methods and standards for the treatment of the mentally ill and mentally retarded. The court must balance society's need for safety against the interests of the institutionalized patient. The liberty of the mentally recovered patient must be appropriately weighed against the potential danger he may present to society.

R.C. Chapters 5122 and 5123 describe mental patients as being either voluntarily or involuntarily hospitalized. These words, voluntary and involuntary, show how the patient was initially hospitalized, but they do not fix his status under R.C. 2945.38(H). A determination must be made as to how the status of discharge, provided in R.C. Chapters 5122 and 5123, is related to the status of release, provided in R.C. 2945.38(H).

The word "discharge" has several meanings, depending on its context. R.C. Chapters 5122 and 5123 deal with hos-

pitalization and institutionalization of the mentally ill and mentally retarded. In those statutes discharge refers to the cessation of hospitalization or institutionalization and connotes one's liberation, release, dismissal, relief, or being set free from hospitalization or institutionalization.

R.C. 2945.38(H) provides when a patient may become eligible for reindictment. It does not use the word "discharge," but rather uses the word "released." Not only is a statutory definition lacking for the word "released," but also no legislative guidelines are provided to suggest how one obtains a released status. So, in order to determine when a patient has reached a status which makes him amenable to further criminal prosecution, the word "released" must be defined and it must then be applied to the facts.

"Released" includes things normally understood to be within the meaning of discharge, since release is not as stringent a word as discharge. Additionally, release from hospitalization or institutionalization is defined to include situations where the actual cessation of institutionalized confinement is not present.

When a patient is able to sign himself out of a hospital or institution at will, without authorization from any other person or agency, he is a voluntary patient. Since he remains hospitalized at his own will, voluntary classification must be considered tantamount to being released. The patient may remain physically present within the hospital even though he is a voluntary patient or classified as being on a released status. Thus, a released status exists when the term of the patient's confinement can be brought to an end through his own volition.

In the facts herein, the defendant's status was classified as being that of a voluntary patient. No facts, however,

were presented to the trial court as to what that voluntary status included. An inquiry, then, must be directed to whether on July 15, 1982, the defendant's status was that of "released" as that term has been defined. If it was, he was amenable to reindictment. If it was not, the state was barred from instituting further criminal proceedings at that time.

Should the trial court find that Davis had been transferred to a voluntary status, it must consider any restrictions or limitations placed upon him by reason of R.C. 5122.03 and 5123.70 and their applicability to Davis' confinement.

The state maintains that Davis was able to demand immediate release under the authority of *Lippmann* v. *Johnson* (1980), 68 Ohio App. 2d 233 [22 O.O.3d 393]. This court finds the *Lippmann* rationale to be inapplicable to the facts of the present case.

In addition to a consideration of the possible circumstances constituting a voluntary status, the trial court must consider the requirements and procedures for the discharge of a patient who is confined pursuant to a court order. R.C. 5122.21 (C) and R.C. 5123.79(C) require the head of the hospital, or the managing officer of the institution, respectively, to give the prosecutor and the Attorney General notice of the discharge of a person who has been adjudged incompetent to stand trial at least ten days prior to such discharge.[2] This notice is for the benefit of the prosecutor so criminal proceedings may be commenced as quickly as possible.

If, upon remand, Davis was able to sign himself out of the institution without authorization from any other person or agency, then Davis' status was voluntary and tantamount to a release. If, however, Davis was unable to freely and voluntarily withdraw from the hospital, he had not been released.

---

[2] R.C. 2945.38(C) requires such notice to the prosecutor to be in writing. The medium through which notice is transmitted is an evidentiary matter rather than a jurisdictional limitation.

Since the status of Davis on July 15, 1982 must be determined, this assignment of error cannot be ruled upon without the trial court's finding Davis' status. This cause is remanded to the trial court for a period of thirty days for the limited purpose of determining Davis' status as of July 15, 1982. If the trial court finds that Davis' status was tantamount to a release, this court will then consider the remaining assignments of error. Should the trial court find that Davis' status could not be considered as that of release, it shall then make such further orders as it deems necessary.

*Judgment accordingly.*

QUILLIN, P.J., and MAHONEY, J., concur.