THE STATE OF OHIO, APPELLEE, *v.*
DAVIS, APPELLANT.

(No. 11077—Decided
February 16, 1984.)

*Mr. Lynn Slaby,* prosecuting attorney, for appellee.

*Mr. Peter T. Cahoon,* for appellant.

_____

*Per Curiam.* Lee Andrew Davis, appellant, was arrested and indicted for the shooting death of gas station attendant George Driscoll. Davis raised the issue of his competency to stand trial for charges of aggravated murder and aggravated robbery. After a hearing, Davis was found not competent to stand trial and probably would not become competent within one year. Davis was involuntarily hospitalized pursuant to R.C. Chapters 5122 and 5123. The indictment was dismissed against Davis and he was confined to Massillon State Hospital.

In July 1982, Davis was reindicted on the same charges. He filed a motion to quash the indictment on the ground that it was barred by R.C. 2945.38(H). The motion to quash was denied. Davis was reevaluated and found competent to stand trial. He was convicted by a jury of aggravated murder and aggravated robbery.

This cause was remanded to the trial court for a further determination regarding Davis' status for reindictment under R.C. 2945.38(H). The trial court held an evidentiary hearing, received briefs and heard arguments. Based upon the information before it, the trial court concluded that Davis could have brought an end to his confinement and that he was amenable to further criminal proceedings on July 15, 1982. We affirm.

### Assignment of Error 1

"The trial court committed prejudicial error by denying defendant-appellant's motion to quash the indictment in this case, which indictment was returned and filed while defendant-appellant was under an adjudication by the trial court of incompetency to stand trial."

This court in *State v. Davis* (1983), 12 Ohio App. 3d 84, provided the trial court with several guidelines in making this determination. This court stated that:

"If, upon remand, Davis was able to sign himself out of the institution without authorization from any other person or agency, then Davis' status was voluntary and tantamount to a release. If, however, Davis was unable to freely and voluntarily withdraw from the hospital, he had not been released." *Id.* at 86.

The trial court, upon remand, concluded that "Davis had been transferred to voluntary status and that he was able to sign himself out of the hospital without authorization from any other person or agency."

The facts elicited during the hearing upon remand indicate that Davis was held from November 24, 1981 until December 23, 1981, as an involuntary patient under the provisions of R.C. 5122.05. On December 23, Davis was transferred to a voluntary status by the hospital. No notice was sent to the prosecutor or the Attorney General as to the change in status. The trial court found that since Davis was a voluntary patient, he was able to sign himself out of the hospital without authorization from any other person or agency. This court can find no error in the trial court's determination.

Davis signed himself in as a voluntary patient upon his discharge from involuntary status. As a voluntary patient at the time of reindictment, Davis was able to implement the mechanism necessary to cause his release. The trial court found this change of status was tantamount to a discharge or release and reindictment was not barred by R.C. 2945.38(H). Therefore, the first assignment of error is not well-taken and is overruled.

## Assignment of Error 2

"The trial court committed prejudicial error by denying defendant-appellant's motion to suppress and objection at trial to the introduction of incriminating statements allegedly made by appellant to law enforcement officers on or about February 14, 1980, as such statements were obtained in violation of appellant's rights as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution."

Davis gave a taped statement when he was initially arrested on February 14, 1980. During the statement Davis indicated he was at home during the evening of the homicide.

In an effort to detect whether Davis had recently fired a weapon, he was given a neutron activation test. After the test, when the officer began to turn the tape recorder on again, Davis objected to any further recording. However, when the officer asked Davis if he had killed the gas station attendant, Davis replied that he had.

The record does not indicate that Davis refused to talk with the officer; his only request was that the officer turn off the tape recorder. Such a request does not support the conclusion that the remaining portion of the statement was involuntarily given. Davis continued to speak with the officer free from any threats or coercion.

Davis further contends the officers should have read his *Miranda* rights to him once questioning was interrupted by the neutron activation test. From the totality of the circumstances it is evident that there was nothing which would warrant a rereading of the *Miranda* rights.

Upon review of the trial court's denial of the motion to suppress, this court must determine whether there was sufficient evidence upon which the trial court could find by a preponderance of the evidence the statements were voluntarily given. *Lego* v. *Twomey* (1972), 404 U.S. 477; *State* v. *Melchior* (1978), 56 Ohio St. 2d 15 [10 O.O.3d 8]. This court has reviewed the record and concludes the trial court could properly find by a preponderance of the evidence

that Davis' statement was voluntarily given.

Accordingly, the second assignment of error is overruled.

### Assignment of Error 3

"The trial court committed prejudicial error by denying defendant-appellant's motion to suppress the tape-recorded statements of July 19, 1982, as such statements were obtained in violation of defendant-appellant's rights as guaranteed by the Fifth and Fourteenth Amendments to the U.S. Constitution and during the time in which defendant-appellant was under adjudication of incompetency."

Davis contends the statement which was given to the police on July 19, 1982, was involuntary *per se* as he was still under an adjudication of incompetence. This court cannot agree.

The Supreme Court in *State* v. *Edwards* (1976), 49 Ohio St. 2d 31 [3 O.O.3d 18] in paragraph two of the syllabus, stated:

"In deciding whether a defendant's confession is involuntarily induced, the court should consider the totality of the circumstances, including the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement."

An adjudication of incompetence is a factor which must be considered by the trial court in determining voluntariness of a statement given by the defendant. The record here indicates that Davis was fully aware of his surroundings and that he related his account of the events of February 14, 1980 in a logical and coherent manner. The interrogating officer asked him if he was freely and voluntarily making the statement. Davis replied in the affirmative.

A finding of incompetence does not *per se* render all subsequent statements made by the defendant involuntary and inadmissible. Rather, the adjudication of incompetence is a factor to be weighed under the test set out in *Edwards, supra.* It does not automatically render a statement given by Davis, during the period of his jural incompetence, involuntary.

This court finds, based upon all of the events and circumstances surrounding the statement, that Davis freely and voluntarily gave the taped statement on July 19, 1982. There was no error on the part of the trial court in admitting the statement as there was a preponderance of evidence by which the trial court could find the statement was given freely and voluntarily.

The third assignment of error is overruled.

The assignments of error are overruled. The judgment of conviction is affirmed.

*Judgment affirmed.*

QUILLIN, P.J., and MAHONEY, J., concur.

GEORGE, J., dissents.

GEORGE, J., dissenting. The majority affirms the conviction on the basis that Davis was a voluntary patient and could have requested a release from the hospital without any additional authorization. This analysis is neither supported by the law nor the facts.

Although Davis had been classified by the hospital staff as a voluntary patient prior to his reindictment, such reclassification was improper. Davis was hospitalized pursuant to R.C. Chapter 5122 and he was held as an involuntary patient for less than one month. After that period of time, the hospital for its own convenience and without providing notice to anyone, discharged Davis as an involuntary patient and permitted him to readmit

himself as a voluntary patient. This status change was never communicated to the court, the prosecutor or the Attorney General as contemplated by law.

While the trial court did find that Davis' status was tantamount to a release, the evidence received from the hospital personnel indicated that Davis had not made any request for release. The hospital personnel speculated that if Davis had made such a request, the hospital would have done nothing to prevent his discharge. The mere fact that these mechanisms were available to Davis does not mean that he was freely able to leave the hospital at the time of the reindictment.

This court has today failed to recognize the statutory duty of the hospital to inform the judicial officers of an impending discharge of a person whom the state wishes to prosecute. The hospital's actions thwarted the plain language and intent of R.C. 5122.21. Here the hospital not only impaired the prosecutor's attempts to reindict Davis, but it has also made itself vulnerable to civil liabilities which could result from Davis' wrongful discharge as an involuntary patient when he should have been held for further criminal prosecution. The hospital's failure to give notice to the prosecutor of Davis' changed classification created confusion as to his status; delayed the finality of the criminal proceedings; and could have resulted in Davis' premature discharge, harm to a member of the public and possible civil liability.

Although it may seem like the propagation of a technical quagmire, it is important to note that the design of the statute is such that strict implementation is necessary to protect all the interests involved, i.e., the public's, the defendant's, the state's and the hospital's. R.C. 2945.38(H) bars the institution of further criminal proceedings once the indictment has been dismissed pursuant to R.C. 2945.38(G). The majority of this court has circumvented the strict mandates of the statute and has permitted the procedure contemplated to be evaded and the hospital to act to the detriment of the prosecution by reclassifying patients without giving the statutory notice.