**ROSE, Appellant,**

v.

**OHIO DEPARTMENT OF REHABILITATION AND CORRECTION, Appellee.**

[Cite as *Rose v. Ohio Dept. of Rehab. & Corr.*, 173 Ohio App.3d 767, 2007-Ohio-6184.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 07AP–472.

Decided Nov. 20, 2007.

768

Norman Rose, pro se.

Marc Dann, Attorney General, and Stephanie Pestello–Sharf, Velda K. Hofacker Carr, and Christopher P. Conomy, Assistant Attorneys General, for appellee.

TYACK, Judge.

{¶ 1} Plaintiff-appellant, Norman Rose ("appellant"), appeals from the judgment of the Ohio Court of Claims granting summary judgment in favor of defendant-appellee, Ohio Department of Rehabilitation and Correction ("ODRC"). Appellant's appeal arises out of his removal as the warden of the Richland Correctional Institution ("RiCI"). The following facts are taken from the complaint and the parties' summary judgment materials.

{¶ 2} Appellant began his employment with ODRC in 1984 as a classified civil servant. In 1994, he accepted an unclassified position as a warden. In August 2001, appellant was promoted to warden of RiCI. He was demoted in September 2003, and eventually assigned to the unclassified position of deputy warden at the Northeast Pre–Release Center.

{¶ 3} Appellant contends that the circumstances leading up to his demotion began when the Marion Correctional Institution ("MCI") improperly sponsored a religious program known as Promise Keepers. In August 2003, a telecast of the

Promise Keepers event at MCI was shown on television at RiCI. Appellant was not aware of the religious content of the program and believed it to be a program promoting family values. Appellant encountered several inmates who were idle, and he ordered them to watch the Promise Keepers telecast. Upon learning of the religious nature of the programming, appellant rescinded the order.

{¶ 4} Appellant alleges that his removal was the result of an August 21, 2003 meeting between former Director Reginald Wilkinson and then Assistant Director Terry Collins in which Wilkinson directed Collins to remove appellant from his job as warden for ordering inmates to watch the Promise Keepers program.

{¶ 5} Collins met with appellant on September 2, 2003 to inform him of his removal as warden. Collins ended the meeting by telling appellant that he was going to be reassigned to one of two classified positions in the Ohio Central School System. On September 4, 2003, appellant accepted one of the classified positions and informed Collins that reinstatement to a classified position entitled him to the pay status he was in when he left the classified ranks. Collins then informed appellant that he would not get the pay raise he was entitled to because appellant was being disciplined.

{¶ 6} Appellant then requested a due-process hearing. A meeting was held between appellant, Wilkinson, and Collins on September 12, 2003. Appellant alleges that this hearing was a sham, and the decision had already been made. Appellant was given a letter dated September 9, 2003 from Collins. In the letter, Collins stated that he was recommending a reduction in rank because of the manner in which appellant had dealt with the problem of "hooch" (homemade wine) over the past year, inappropriate comments to the chairman of the Rules Infraction Board ("RIB"), mandating merit status inmates to watch the Promise Keepers broadcast, and a lack of trust and confidence in appellant's decisions and judgment. Appellant contends that he was demoted to an unclassified position, that of deputy warden, to prevent him from getting the pay he was entitled to if he had been allowed to exercise his fallback rights pursuant to R.C. 5120.38. Appellant further claims that he was demoted as a scapegoat for former Director Wilkinson's improper and illegal sponsorship of religion, specifically the promotion of Christianity.

{¶ 7} Meanwhile, on September 6 and 12, 2003, the Mansfield News Journal reported that appellant was being disciplined because of issues at RiCI including excessive alcohol and homemade weapons. More articles were published on September 14, 2003. Appellant claims that Collins and Wilkinson released defamatory statements to the media.

{¶ 8} Appellant filed a complaint in the Court of Claims on February 7, 2005. He filed a connected action in the United States District Court for the Northern

District of Ohio. He filed an amended complaint in the Court of Claims on April 22, 2005.

{¶ 9} The majority of appellant's claims are based on his contention that when he was demoted and returned to classified service, he was denied his right to fall back to classified service and denied a pay raise to which he was allegedly entitled. He asserted claims for defamation, First Amendment violations, Fourteenth Amendment violations, violations of his civil rights pursuant to Section 1983, Title 42, U.S.Code, breach of contract, promissory estoppel, detrimental reliance, retaliation, and civil conspiracy.

{¶ 10} On June 29, 2006, appellant entered into a consent decree in the federal action concerning religious activities allegedly being sponsored by ODRC.

{¶ 11} ODRC filed a motion for summary judgment on the claims pending in the Court of Claims. The Court of Claims held a hearing on the motion and, on May 16, 2007, granted summary judgment in favor of ODRC.

{¶ 12} The Court of Claims ruled that mandamus was the proper remedy to compel a state official to perform the legal duty of reinstating appellant to the classified service. The court stated that it was without jurisdiction to grant such relief. As for the contract claim, the court held that appellant did not hold his position by contract and therefore was without a legal remedy in the Court of Claims for any alleged breach. The court concluded that appellant's defamation claims were barred by the one-year statute of limitations for such claims. Likewise, the alleged unlawful acts underlying appellant's civil-conspiracy claims either were not properly before the Court of Claims or they were untimely. Finally, the court indicated that it was without jurisdiction to consider appellant's claims of violations of his civil and constitutional rights.

{¶ 13} This appeal followed. On appeal, appellant asserts the following assignments of error:

1. The Court of Claims erred when it failed to hold an immunity hearing as proscribed by Ohio Revised Code 9.86, Ohio Revised Code 2743.02, and Court of Claims of Ohio, Local Rule 4.1.

2. The Court of Claims erred when it declined to adjudicate the plaintiff's Fourteenth Amendment Constitutional and 42 USC 1983 claims.

3. The Court of Claims erred when it failed to award back pay to the plaintiff, who was denied his statutory afforded fallback rights, or to issue a writ of mandamus to enforce the plaintiff's statutory right to fallback from unclassified to classified civil service.

4. The Court of Claims erred in issuing Summary Judgment for defendants.

{¶ 14} For ease of discussion, we elect to discuss appellant's assignments of error out of order. At the outset, we note that appellant has not challenged the

trial court's ruling that his defamation claims are barred by the statute of limitations or that his conspiracy claims do not survive.

{¶ 15} The law governing motions for summary judgment is clearly set forth in Civ.R. 56. In *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264, the Supreme Court of Ohio clarified the burdens of both parties with respect to a motion for summary judgment:

> [A] party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some *evidence* of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party.

(Emphasis sic.)

{¶ 16} In Ohio, these principles are embodied in a three-prong test taken directly out of Civ.R. 56: (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion, that conclusion being adverse to the party against whom the motion for summary judgment is made. *State ex rel. Grady v. State Emp. Relations Bd.* (1997), 78 Ohio St.3d 181, 183, 677 N.E.2d 343.

{¶ 17} Moreover, " '[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.' " *Reeves v. Sanderson Plumbing Prods., Inc.* (2000), 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105, quoting *Anderson v. Liberty Lobby, Inc.* (1986), 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202. This court follows these well-settled principles. See, e.g., *Baer v. Scotts Co.* (Dec. 6, 2001), Franklin App. No. 01AP–323, 2001 WL 1548759.

{¶ 18} Appellate review of summary judgment motions is de novo. *Helton v. Scioto Cty. Bd. of Commrs.* (1997), 123 Ohio App.3d 158, 162, 703 N.E.2d 841. When reviewing a trial court's decision granting summary judgment, we conduct an independent review of the record, and the appellate court "stands in the shoes

of the trial court." *Mergenthal v. Star Banc Corp.* (1997), 122 Ohio App.3d 100, 103, 701 N.E.2d 383.

{¶ 19} In his third assignment of error, appellant asserts that the Court of Claims erred in failing to rule on his right to fallback to the classified service and his back pay. R.C. 5120.38 addresses his fallback rights as an employee of ODRC. This statute provides:

> Subject to the rules of the department of rehabilitation and correction, each institution under the department's jurisdiction * * * shall be under the control of a managing officer known as a warden or other appropriate title. The managing officer shall be appointed by the director of the department of rehabilitation and correction and shall be in the unclassified service and serve at the pleasure of the director. Appointment to the position of managing officer shall be made from persons who have criminal justice experience. A person who is appointed to the position of managing officer from a position in the classified service shall retain the right to resume the status that the person held in the classified service immediately prior to the appointment. Upon being relieved of the person's duties as managing officer, the person shall be reinstated to the position in the classified service that the person held immediately prior to the appointment to the position of managing officer or to another position that the director, with approval of the state department of administrative services, certifies as being substantially equal to that prior position. Service as a managing officer shall be counted as service in the position in the classified service held by the person immediately preceding the person's appointment as managing officer. A person who is reinstated to a position in the classified service, as provided in this section, shall be entitled to all rights and emoluments accruing to the position during the time of the person's service as managing officer.
>
> The managing officer, under the director, shall have entire executive charge of the institution for which the managing officer is appointed. Subject to civil service rules and regulations, the managing officer shall appoint the necessary employees and the managing officer or the director may remove such employees for cause.

{¶ 20} Appellant brought claims for breach of contract and promissory estoppel asserting that Wilkinson breached a contract governing the wages, hours, terms, and conditions for public employees. Appellant also asserted that he relied to his detriment on a promise that he could return to classified service when he accepted an unclassified position.

{¶ 21} The trial court was correct in entering judgment for ODRC on these claims. Appellant's right to exercise fallback rights arises from statute, not

contract. Employees in the unclassified service hold their positions at the pleasure of the appointing authority, may be dismissed from their employment without cause, and are afforded none of the procedural safeguards available to those in the classified service. *Suso v. Ohio Dept. of Dev.* (1993), 93 Ohio App.3d 493, 499, 639 N.E.2d 117. Moreover, when a public employee holds his or her position by means of statute, promissory estoppel cannot overcome statutory authority. Public officers cannot bind the state by acts outside their express authority. *Drake v. Med. College of Ohio* (1997), 120 Ohio App.3d 493, 496, 698 N.E.2d 463.

{¶ 22} Appellant cites *State ex rel. Asti v. Ohio Dept. of Youth Servs.*, 107 Ohio St.3d 262, 2005-Ohio-6432, 838 N.E.2d 658, for the proposition that a classified employee who accepts an unclassified position has an unqualified right to return to a classified position. In that case, the Supreme Court of Ohio held that an employee of the Ohio Department of Youth Services was entitled to a writ of mandamus compelling his employer to reinstate him to the classified service. Also, mandamus is an appropriate remedy to compel payment of a salary increase to which a public employee is entitled. *State ex rel. Ohio AFL–CIO v. Voinovich* (1994), 69 Ohio St.3d 225, 240, 631 N.E.2d 582.

{¶ 23} However, it is equally clear under Ohio law that the Court of Claims, a court of limited jurisdiction, lacks statutory jurisdiction to consider mandamus. *Ohio Academy of Nursing Homes v. Ohio Dept. of Job & Family Servs.*, 114 Ohio St.3d 14, 2007-Ohio-2620, 867 N.E.2d 400, at ¶ 19; *State ex rel. Washington v. Ohio Adult Parole Auth.* (1999), 87 Ohio St.3d 258, 719 N.E.2d 544. Thus, while the Supreme Court of Ohio has indicated that mandamus is the appropriate means by which appellant can assert his claim to fallback rights, the Ohio Court of Claims is not the appropriate forum in which to do so. Therefore, the Court of Claims had no jurisdiction to grant a writ of mandamus and it did not err by entering judgment for the state on appellant's contract and promissory-estoppel claims.

{¶ 24} With respect to the constitutional claims and claims under Section 1983, Title 42, U.S.Code, appellant cites *Howlett v. Rose* (1990), 496 U.S. 356, 358, 380–381, 110 S.Ct. 2430, 110 L.Ed.2d 332, for the proposition that the Ohio Court of Claims must hear his claims. In *Howlett,* the United States Supreme Court ruled that federal and state courts have concurrent jurisdiction over Section 1983, Title 42, U.S.Code claims, and that states must permit such actions in their courts.

{¶ 25} Appellant is correct that the state and federal courts have concurrent jurisdiction over Section 1983 actions. However, it is well established that the common pleas courts of the state of Ohio are the appropriate forums for

such actions and that such claims are not actionable in Court of Claims. *Howard v. Supreme Court of Ohio,* Franklin App. No. 04AP–1093, 2005-Ohio-2130, 2005 WL 1022911, at ¶ 15; *Dale v. State Hwy. Patrol,* Franklin App. No. 04AP–639, 2005-Ohio-3383, 2005 WL 1532421, at ¶ 26. Pursuant to R.C. 2743.02, the state of Ohio has consented to be sued in the Court of Claims in accordance with the same rules applicable to private persons. The trial court was correct to rule that such claims are not actionable in the Court of Claims. However, the claims should have been dismissed for lack of jurisdiction rather than granting summary judgment for ODRC.

{¶ 26} ODRC contends that res judicata, specifically the consent decree in the federal action, provides an alternate basis for summary judgment on the constitutional and civil rights claims. We disagree.

{¶ 27} Since the Court of Claims was without jurisdiction to rule on the constitutional and civil rights claims, it follows that it could not grant summary judgment on the basis of res judicata.

{¶ 28} In a related argument, appellant argues in his first assignment of error that the Court of Claims erred in failing to hold an immunity hearing to determine whether Wilkinson acted with malicious purpose, in bad faith, or in a wanton and reckless manner. ODRC responds that requiring the Court of Claims to conduct such a hearing would be a vain act.

{¶ 29} Appellant's remaining claims against Wilkinson were brought under Section 1983, Title 42, U.S.Code and the Constitution of the United States. For these claims to be cognizable, a plaintiff must allege that Wilkinson was operating under color of law.

{¶ 30} In *Staton v. Henry* (Apr. 27, 1998), Butler App. No. CA97–10–184, 1998 WL 204937, the Butler County Court of Appeals summarized this issue as follows:

"A cause of action under Section 1983 must allege that a person, acting 'under color of law,' deprived the plaintiff of a constitutionally guaranteed federal right." *Conley v. Shearer* (1992), 64 Ohio St.3d 284, 292, 595 N.E.2d 862, citing *Cooperman v. Univ. Surgical Assoc., Inc.* (1987), 32 Ohio St.3d 191, 513 N.E.2d 288, paragraph two of the syllabus. Personal immunity for state officers and employees under R.C. 9.86 is expressly limited to civil actions arising under the laws of Ohio, so the exclusive, original subject matter jurisdiction afforded the Court of Claims by R.C. 2743.02(F) does not apply to federal claims. Further, courts have uniformly held that violations of Section 1983, Title 42, U.S.Code by state officers and employees cannot be immunized by state law and that a court of common pleas has jurisdiction to hear such claims. *Conley,* supra, 64 Ohio St.3d at 292–293, 595 N.E.2d 862; see *Bleicher v. Univ. of Cincinnati*

*College of Med.* (1992), 78 Ohio App.3d 302, 306, 604 N.E.2d 783 (holding that constitutional and Section 1983 claims are not actionable in the Court of Claims).

{¶ 31} Therefore, since personal immunity is inapplicable to these claims, any hearing would be a vain act. The first assignment of error is not well taken and is overruled.

{¶ 32} Based on the foregoing, appellant's first, second, and third assignments of error are not well taken and are overruled. Appellant's fourth assignment of error is sustained with respect to his constitutional claims, and his claim under Section 1983, Title 42, U.S.Code. In all other respects, the fourth assignment of error is overruled. We enter judgment dismissing for lack of jurisdiction appellant's claims under the First and Fourteenth Amendments, and his claim under Section 1983, Title 42, U.S.Code.

{¶ 33} The judgment of the Ohio Court of Claims is affirmed in part and reversed in part, and the constitutional and civil rights claims are dismissed for lack of jurisdiction.

Judgment accordingly.

PETREE and McGRATH, JJ., concur.