[Cite as *Grange Mut. Ins. Co. v. Patino*, 2020-Ohio-466.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Grange Mutual Insurance Company, | : | |
| Plaintiff-Appellee, | : | |
| v. | : | |
| Francisco I. Fregozo Patino, et al., | : | No. 19AP-278 |
| | | (C.P.C. No. 17CV-5276) |
| Defendants-Appellants, | : | |
| | | (REGULAR CALENDAR) |
| v. | : | |
| First Acceptance Insurance Company, Inc. | : | |
| Third-Party Defendant-Appellee. | : | |
| | : | |

D E C I S I O N

Rendered on February 11, 2020

**On brief:** *James R. Leickly*, for appellant Francisco I. Fregozo Patino. **Argued:** *James R. Leickly*.

**On brief:** *Earl, Warburton & Adams, Inc.,* and *Christopher R. Walsh*, for appellee, First Acceptance Insurance Company, Inc. **Argued:** *Christopher R. Walsh*.

APPEAL from the Franklin County Court of Common Pleas

BRUNNER, J.

{¶ 1} Defendant-appellant, Francisco I. Fregozo Patino ("Patino"), appeals from a judgment of the Franklin County Court of Common Pleas entered on March 15, 2019 concluding that third-party defendant-appellee, First Acceptance Insurance Company, Inc. ("First Acceptance"), had no duty to indemnify Patino for a motor vehicle collision that

occurred while Patino was driving a motor vehicle that was owned by his father, Francisco Javier Fregozo Alvarez ("Alvarez"), and insured by First Acceptance.[1]

{¶ 2}    For the following reasons, we affirm the judgement of the trial court.

## I.  FACTS AND PROCEDURAL BACKGROUND

{¶ 3}    The underlying matter arises from a motor vehicle collision that resulted in property damage.  There ensued a dispute as to whether First Acceptance, as the insurer of the vehicle at fault in the collision, must provide coverage for those damages.  First Acceptance asserts that no coverage is available under the facts here because the vehicle's driver, Patino, was excluded from coverage under the policy insuring the vehicle (the "Alvarez policy").  Patino argues that the exclusion is inapplicable because First Acceptance had certified the Alvarez policy "as proof of financial responsibility" for him with the Ohio Bureau of Motor Vehicles ("BMV").  While the central issue before the trial court was who was responsible for a financial remedy, the crux of the dispute is the meaning of the phrase "certified as proof of financial responsibility" as used in the Alvarez policy.

{¶ 4}    The facts of the underlying case are generally undisputed. On May 23, 2016, Patino was driving Alvarez's Chevrolet Astro (the "Astro"), with Alvarez's permission, when he was involved in a motor vehicle collision that resulted in damages to other vehicles.  One of the damaged vehicles was insured by plaintiff Grange Mutual Insurance Company ("Grange").

{¶ 5}    At the time of the accident, Patino and Alvarez resided in the same household. Each maintained separate automobile insurance policies with First Acceptance that were each in effect on the date of the accident.  The Astro is a covered vehicle under the Alvarez policy.  The Alvarez policy defines an "**[i]nsured**" as including "[a]ny person driving **your covered auto** with **your** permission and within the scope of such permission."  (Emphasis sic.) (Ex. 1 at 9, attached to Aug. 21, 2018 Walsh Aff.)  The Alvarez policy contains a provision that excludes from coverage a driver who resides with the named insured but who is not listed on the policy: "**Insured** does not mean: a driver who is not listed on this policy, who resides in the same household as the **named insured** * * *; and is involved in an **accident** which occurs while the **automobile** is being driven * * * or used in any manner by this

---

[1] We use the maternal surnames ("segundo apellido" or "apellido materno"), those being "Patino" and "Alvarez," to identify the defendant-appellant and his father, respectively, consistent with the way they were identified by the trial court in its various rulings.

person."  (Emphasis sic.) *Id.* However, that provision of the Alvarez policy also contains an exception to the exclusion: "This limitation shall not apply if this policy is certified as proof of financial responsibility."  *Id.*

{¶ 6}     The final provision of the Alvarez policy that is relevant to the issues involved is this provision:

> **FINANCIAL RESPONSIBILITY REQUIRED**
>
> When this policy is certified as proof of financial responsibility, this policy will comply with the law to the extent required. **You** must reimburse **us** if **we** make a payment that **we** would not have made if this policy were not certified as proof of financial responsibility.

 (Emphasis sic.) (Ex. 1 at 11.)

{¶ 7}     Patino's own policy with First Acceptance (the "Patino policy") provides him coverage when he is "operating any **non-owned auto** with the permission of the owner." (Emphasis sic.) (Ex. B at 5, attached to Aug. 8, 2018 Patino's Mot. for Summ. Jgmt.) The Patino policy defines a "**non-owned auto**" as "any **auto** that is not **owned** by or furnished or available for the regular use by **you**, or any **family member** while in the custody of or being operated by **you** or any **family member** and while being used within the scope of the **owner's** express or implied permission."  (Emphasis sic.) *Id.* at 4. The Patino policy defines "[**f]amily member**" as "a person related to **you** by blood, marriage or adoption that is a **resident** of **your** household."  (Emphasis sic.) *Id.* at 3.

{¶ 8}     Patino believed he had insurance coverage for the collision under the Alvarez policy because he was operating his father's vehicle with his father's permission.  First Acceptance, however, declined to provide coverage because, although Patino was driving the Astro with Alvarez's permission, Patino and Alvarez resided together, and Patino was not listed on the Alvarez policy insuring the Astro.  First Acceptance maintains that the household member exclusion precluded coverage under the Alvarez policy.  Patino asserted that the exclusion did not apply if the Alvarez policy was certified as proof of financial responsibility.

{¶ 9}     First Acceptance's denial of coverage resulted in the BMV notifying Patino that his driver's license was subject to suspension for failure to provide proof of financial responsibility on the date of the accident.  Patino requested a hearing. Before the hearing,

Patino and Alvarez asked First Acceptance to provide proof that they had insurance on the date of the accident. First Acceptance responded by letters to Patino and Alvarez dated October 16, 2016. The letter to Alvarez stated as follows:

> To whom it may concern:
>
> The above listed [Alvarez] policy began on 12/22/2014 with an expiration date of 12/22/2016. Since inception of this policy, the insured has paid continuously and has had a good payment history. As of the date of this letter, the status of the policy is Active.

(Ex. 1 at 2, attached to Sept. 4, 2018 Memo. Contra Mot. for Summ. Jgmt.) The letter identified Alvarez and Neri Patino as the two drivers insured on the policy and listed three vehicles insured on the policy, including the Astro. Included with the letter was a document captioned "Proof of Insurance" relating to the Astro and setting forth coverage limits for the vehicle and the effective dates of the policy. *Id.*

{¶ 10} Patino testified at the November 16, 2016 BMV suspension hearing and provided the Alvarez policy and other documents to the BMV hearing officer as proof of financial responsibility. On November 17, 2016, the BMV hearing officer issued a report and recommendation stating Patino and Alvarez had established they had had insurance in effect at the time of the collision. The BMV hearing officer's report criticized First Acceptance's denial of coverage "based on obscure and confusing claimed exclusions from coverage." (Ex. C at 1, attached to Aug. 8, 2018 Patino's Mot. for Summ. Jgmt.) The hearing officer found, pursuant to R.C. 4509.39, that First Acceptance was obligated to pay any judgment that may be taken against Patino regarding the collision. However, the BMV hearing officer's report also stated that the hearing officer's "finding is not binding upon the insurer and has no legal effect except for the purpose of this hearing." (Ex. C at 2.)

{¶ 11} First Acceptance continued to decline to provide coverage for the collision. On June 12, 2017, Grange commenced a subrogation action against Patino to recover money for its insured.

{¶ 12} On April 27, 2018, Patino filed a third-party complaint against First Acceptance for breach of contract and seeking a declaration that First Acceptance was required to provide Patino coverage under the Alvarez policy. Two rounds of cross-motions for summary judgment followed. On August 8, 2018, Patino filed a motion for summary

judgment, arguing that he qualified as an insured under the Alvarez policy. On August 21, 2018, First Acceptance opposed that motion and filed its on motion for summary judgment, arguing that Patino did not qualify as an insured under the Alvarez policy.

{¶ 13}   On October 16, 2018, the original trial court judge assigned to the underlying matter granted summary judgment in favor of First Acceptance. The trial court made an initial finding that Patino was not an insured under the Alvarez policy because Patino resided with Alvarez and was not named as an insured on the Alvarez policy. The trial court then addressed the exception to that limitation and concluded the Alvarez policy had not been certified as proof of financial responsibility. The trial court found that the issue of certification was governed by R.C. 4509.46, which established that the insurance company certifies its policy, not the BMV. Finding no evidence that First Acceptance had certified the policy, the trial court concluded that the limitation of coverage in the Alvarez policy applied to Patino and granted First Acceptance's motion for summary judgment.

{¶ 14}   After ruling in favor of First Acceptance, the trial court granted Patino leave to file an amended third-party complaint to add claims seeking coverage under the Patino policy. On November 1, 2018, Patino filed his amended third-party complaint seeking declaratory relief under his own policy as well as the Alvarez policy. Patino argued that the Alvarez and Patino policies were identical and that he "should be covered by [First] Acceptance under both identical policies." (Sept. 11, 2018 Patino's Mot. to Amend Compl. at 1.)

{¶ 15}   On November 21, 2018, First Acceptance filed for summary judgment on the coverage claims relating to the Patino policy. First Acceptance argued that, while the Patino policy covered Patino when he was driving someone else's vehicle with permission, coverage was excluded when the vehicle belonged to a family member, as was the case here.

{¶ 16}   Patino filed for summary judgment on November 30, 2018, asserting that First Acceptance, not the BMV, had certified the Alvarez policy in accordance with R.C. 4509.46 by means of the letter and proof of insurance documents First Acceptance had sent to Alvarez on October 18, 2016 before Patino's BMV suspension hearing. Patino argued that

the household member limitation First Acceptance relied on did not apply and, therefore, he was entitled to coverage under the Alvarez policy.[2]

{¶ 17} The successor trial court judge initially ruled on First Acceptance's motion for summary judgment on the third-party claims relating to the Patino policy.  The trial court found that the Patino policy did not afford coverage under the facts and granted summary judgment to First Acceptance for this reason.

{¶ 18} The trial court next addressed Patino's motion for summary judgment, which the trial court construed as a request for reconsideration of the October 16, 2018 ruling that no coverage was available under the Alvarez policy.  The trial court determined that the October 16, 2018 ruling was not a final order and was subject to reconsideration.  The trial court discussed in detail the arguments of both parties as to the meaning of the phrase "certified as proof of financial responsibility."  As on reconsideration, having examined the Alvarez policy as a whole to determine the intent of the parties, the trial court agreed with First Acceptance that the phrase "certified as proof of financial responsibility" has a definite legal meaning, and it thereby rejected Patino's "plain and ordinary meaning" analysis.  The trial court also found that the policy's household member exclusion did not contravene Ohio's public policy.  Accordingly, on March 15, 2019, the trial court issued a decision and entry granting First Acceptance's November 21, 2018 motion for summary judgment and denying Patino's November 13, 2018 motion for summary judgment.  By judgment entry dated April 1, 2019, the trial court entered judgment in favor of First Acceptance on all claims asserted in the third-party complaint.

{¶ 19} Patino timely appealed.

## II.  ASSIGNMENTS OF ERROR

{¶ 20} Patino presents two assignments of error:

> [1.] The trial court erred as a matter of law in denying Patino's Motion for Summary Judgment against Third-Party Defendant/Appellee [First] Acceptance because under the common usage of the term "certified" in [First] Acceptance's insurance policy (which contained no other definition), an insured would believe that requesting and receiving proof of

---

[2] As indicated by footnote 7 in his November 30, 2018 motion for summary judgment, Patino did not pursue summary judgment as to his own policy: "As stated above, Mr. Fregozo Patino is not, at this time, going to assert coverage under his own [First] Acceptance policy, but, rather, as a permitted driver under his father's policy."

insurance from [First] Acceptance was what was meant by the term "certified" in the policy.

[2.] The trial court erred as a matter of law in denying Patino's Motion for Summary Judgment against Third-Party Defendant/Appellee [First] Acceptance because under the common usage of the term "certified" in [First] Acceptance's insurance policy (which contained no other definition), an insured would believe that the very event of purchasing and receiving the insurance policy from [First] Acceptance would be the insured's way of, in common language, certifying, proving or providing evidence of financial responsibility.

## III. LAW AND DISCUSSION

### A. Standard of Proof

{¶ 21} The trial court resolved Patino's third-party claims against First Acceptance by summary judgment after orders were entered governing discovery between the parties.

Appellate review of summary judgment motions is de novo. *Helton v. Scioto Cty. Bd. of Commrs.* (1997), 123 Ohio App. 3d 158, 162, 703 N.E.2d 841. When reviewing a trial court's decision granting summary judgment, we conduct an independent review of the record, and the appellate court "stands in the shoes of the trial court." *Mergenthal v. Star Banc Corp.* (1997), 122 Ohio App.3d 100, 103, 701 N.E.2d 383.

*Rose v. Ohio Dept. of Rehab. & Corr.*, 173 Ohio App.3d 767, 2007-Ohio-6184, ¶ 18 (10th Dist.).

{¶ 22} When reviewing on appeal an order granting a motion for summary judgment, an appellate court must use the same standard of review as the trial court. *Freeman v. Brooks*, 154 Ohio App.3d 371, 2003-Ohio-4814, ¶ 6 (10th Dist.), citing *Maust v. Bank One of Columbus, N.A.*, 83 Ohio App.3d 103, 107 (10th Dist.1992), *jurisdictional motion overruled*, 66 Ohio St.3d 1488 (1993). An appellate court's review of summary judgment disposition is independent and without deference to the trial court's determination. *Brown v. Scioto Cty. Bd. of Commrs.*, 87 Ohio App.3d 704, 711 (4th Dist.1993). In determining whether a trial court properly granted summary judgment, an appellate court must review the evidence according to the standard set forth in Civ.R. 56, as well as that stated in applicable case law. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356 (1992); *Cooper v. Red Roof Inns, Inc.*, 10th Dist. No. 00AP-876 (Mar. 30, 2001).

{¶ 23} Civ.R. 56(C) requires that:

> Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Civ.R. 56 has been described as a means to facilitate the early assessment of the merits of claims, to foster pre-trial dismissal of meritless claims, and to define and narrow issues for trial. *Telecom Acquisition Corp. I v. Lucic Ents.*, 8th Dist. No. 102119, 2016-Ohio-1466, ¶ 92. *See also Kulch v. Structural Fibers, Inc.*, 78 Ohio St.3d 134, 170 (1997) (Cook, J., concurring in part and dissenting in part). As such, summary judgment is a procedural device designed to promote judicial economy and to avoid needless trials.

> "The goal of a motion for summary judgment is to narrow the issues in a case to determine which, if any, should go to trial. ' "The purpose of summary judgment is not to try issues of fact, but is, rather, to determine whether triable issues of fact exist." ' *State ex rel. Anderson v. The Village of Obetz*, 10th Dist. No. 06AP-1030, 2008-Ohio-4064, ¶ 64, quoting *Lakota Local School Dist. Bd. of Edn. v. Brickner*, 108 Ohio App.3d 637, 643, 671 N.E.2d 578 (1996) (citations omitted.)"

*Erickson v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 16AP-74, 2017-Ohio-1572, ¶ 19, quoting *Thevenin v. White Castle Mgt. Co.*, 10th Dist. No. 15AP-204, 2016-Ohio-1235, ¶ 45 (Brunner, J., concurring). Thus, a party seeking summary judgment on the grounds that a nonmoving party cannot prove its case bears the initial burden of informing the trial court of the basis for the motion and must identify those parts of the record which demonstrate the absence of a genuine issue of material fact on the elements of the nonmoving party's claims. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-93 (1996).

{¶ 24} If the moving party has satisfied its initial burden, the burden shifts to the nonmoving party to set forth specific facts showing there is a genuine issue for trial. If the nonmoving party does not respond, summary judgment, if otherwise appropriate, shall be entered against the nonmoving party. *Id.* The nonmoving party may not rest on the mere allegations or denials of his or her pleadings, but must respond with specific facts showing there is a genuine issue for trial. Civ.R. 56(E); *Dresher* at 293; *see also Erickson* at ¶ 19-20.

**B. Assignments of Error**

{¶ 25}   Because Patino's two assignments of error are interrelated, we address them as one.  Taken together, Patino asserts in his two assignments of error that First Acceptance has certified the Alvarez policy for proof of financial responsibility and, therefore, must provide coverage to Patino under the Alvarez policy.

{¶ 26}   As a preliminary matter, we note that Patino appears to have abandoned his claim for coverage under his own policy.  Footnote 7 of his November 30, 2018 motion for summary judgment states, "[a]s stated above, Mr. Fregozo Patino is not, at this time, going to assert coverage under his own [First] Acceptance policy, but, rather, as a permitted driver under his father's policy."  (Nov. 30, 2018 Patino's Mot. for Summ. Jgmt. at 13.) Patino's brief states he is appealing "from two summary judgments (October 16, 2018 and March 15, 2019) issued by the trial court against Patino related to the third-party declaratory judgment action Patino brought against his father's automobile insurer, [First Acceptance]." (Patino's Brief at 1.)  Consistent with the record, we limit our review of Patino's claims for coverage to those made only under the Alvarez policy.

{¶ 27}   Patino asserts that he is entitled to coverage because the Alvarez policy does not define the term "certified."  He argues that, in the absence of a policy definition, "certified" must be given its plain and ordinary meaning, as he understands it to be.  Patino argues that, under the common usage of the term "certified," an insured would believe that (1) merely requesting and receiving proof of insurance from the insurer was what was meant by the term "certified" in the policy, and (2) merely purchasing and receiving the insurance policy from the insurer would be the insured's way of certifying, proving, or providing evidence of financial responsibility.

{¶ 28}   Both trial court judges who considered Patino's argument in the underlying matter were unpersuaded by it.  Having thoroughly reviewed the record and the parties' briefs and listened to oral arguments, we are equally unpersuaded by Patino's arguments. We find that both trial court judges stated the pertinent facts and applied the appropriate law to find that Patino had not met his requisite burden in order to prevail on summary judgment.

{¶ 29} The October 16, 2018 judgment and entry denying Patino summary judgment on this issue contains this language:

As with most coverage cases, this matter all comes down to the wording of the subject insurance policy. * * * The question now becomes whether there exists an exclusion in the Policy which prevents Mr. Patino from being covered. On page 3 of the Policy it states:

**Insured does not mean:** a driver who is not listed on this policy, who resides in the same household as the named insured, or is a regular or frequent operator of any vehicle insured under this policy; and is involved in an accident which occurs while the vehicle is being driven, operated, manipulated, maintained, serviced or used in any other manner by this person. This limitation shall apply whether or not the named insured is occupying the vehicle at the time the said driver is using it in any manner, whatsoever. This limitation shall not apply if this policy is certified as proof of financial responsibility.

It is undisputed that Mr. Patino is not a named insured on the Policy. It is undisputed that at the time of the accident Mr. Patino lived with Mr. Fregozo. Therefore, under the clear wording of the above provision, Mr. Patino is not an insured under the Policy.

In an attempt to avoid this result, Mr. Patino argues that the Policy was certified and therefore, the above limitation does not apply. In support of this, Mr. Patino first presents his own affidavit whereby he essentially states his opinion as to this matter. First Acceptance has moved the Court to strike this affidavit, but the Court will not do so. The Court is accepting Mr. Patino's affidavit for what it is, a representation of his opinion as to this matter. Regardless of what Mr. Patino thinks, his opinion of whether the Policy was certified has no sway over the Court's decision.

Mr. Patino next argues that the Policy was certified by the Ohio BMV via a hearing and hence, the limitation does not apply. Regardless of what the Ohio BMV has found, Mr. Patino's argument fails. The issue of whether the Policy in this case is certified or not is governed by R.C. 4509.06, which states:

Proof of financial responsibility may be furnished by filing with the registrar of motor vehicles the written certificate of any insurance carrier authorized to do business in this state certifying that there is in effect a motor-vehicle liability policy for the benefit of the person to furnish proof of financial responsibility. The certificate either shall state the expiration date of the policy, which date shall be not less than one year

from the effective of the certificate, or if no expiration date is stated in the certificate, then such policy shall not expire until canceled or terminated as provided in section 4509.57 of the Revised Code. The certificate shall also designate by explicit description or by appropriate reference all motor vehicles covered, unless the policy is issued to a person who is not the owner of a motor vehicle.

As the above statute clearly indicates, it is an insurance company that certifies an insurance policy, not the Ohio BMV. In the present matter, there is no evidence that First Acceptance ever certified the Policy. Since this is so, the limitation of coverage found in the Policy to Mr. Patino and First Acceptance's motion must be granted.

(Oct. 16, 2018 Decision and Entry at 3-4.)

{¶ 30}  As previously noted, the successor trial court judge to the original trial court judge reconsidered the October 16, 2018 ruling that there was no coverage available under the Alvarez policy for the collision.  After revisiting the parties' arguments about whether the Alvarez policy had been "certified as proof of financial responsibility" and examining the analysis set forth in the October 16, 2018 ruling that had concluded it had not, the successor trial court judge found "that the exception to the exclusion does not apply."  (Mar. 15, 2019 Decision and Entry at 15.)  We agree.

{¶ 31}  In order to recover on a claim for a breach of an insurance contract, a plaintiff must prove that a policy of insurance existed and that the claimed loss was covered under the policy.  *Inland Rivers Serv. Corp. v. Hartford Fire Ins. Co.*, 66 Ohio St.2d 32, 34 (1981). "Insurance contracts must be construed in accordance with the same rules as other written contracts."  *Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd.*, 64 Ohio St.3d 657, 665 (1992). "When confronted with an issue of contractual interpretation, the role of a court is to give effect to the intent of the parties to the agreement."  *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, ¶ 11.  Courts are to "examine the insurance contract as a whole and presume that the intent of the parties is reflected in the language used in the policy" and "look to the plain and ordinary meaning of the language used in the policy unless another meaning is clearly apparent from the contents of the policy."  *Id.*  However, "[w]hen the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties."  *Id.*  "As a matter of law, a contract is unambiguous if it can be given a definite legal meaning."  *Id.*  Further, "[a] court must give undefined words used

in an insurance contract their plain and ordinary meaning." *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm*, 73 Ohio St.3d 107, 108 (1995).

{¶ 32} "Ambiguities in insurance policies should be construed liberally in favor of coverage." *Sturgeon v. Dubois*, 10th Dist. No. 00AP-1025 (July 17, 2001), citing *Yeager v. Pacific Mut. Life Ins. Co.*, 166 Ohio St. 71 (1956), paragraph of the syllabus. We also note, however, that "[t]he rule requiring liberal interpretations of insurance contracts * * * 'does not require that a court adopt a forced or strained construction of an insurance contract.' " *Sturgeon*, quoting *Knowlton v. Nationwide Mut. Ins. Co.*, 108 Ohio App.3d 419, 423 (10th Dist.1996).

{¶ 33} All parties agree that the dispute in the instant matter is whether the Alvarez policy was certified as proof of financial responsibility. As noted previously, First Acceptance contends that the policy could only be certified, as that term is used in the policy, pursuant to the language contained in Ohio's Financial Responsibility Act (the "Act"), or R.C. Chapter 4509. The Act mandates in part as follows:

> No person shall operate, or permit the operation of, a motor vehicle in this state, unless proof of financial responsibility is maintained continuously throughout the registration period with respect to that vehicle, or, in the case of a driver who is not the owner, with respect to that driver's operation of that vehicle.

R.C. 4509.101(A)(1).

{¶ 34} The Act defines "proof of financial responsibility" as follows:

> "Proof of financial responsibility" means proof of ability to respond in damages for liability, on account of accidents occurring subsequent to the effective date of such proof, arising out of the ownership, maintenance, or use of a motor vehicle in the amount of twenty-five thousand dollars because of bodily injury to or death of one person in any one accident, in the amount of fifty thousand dollars because of bodily injury to or death of two or more persons in any one accident, and in the amount of twenty-five thousand dollars because of injury to property of others in any one accident.

R.C. 4509.01(K).

{¶ 35} The Act defines a "motor vehicle policy" as follows:

> "Motor-vehicle liability policy" means an "owner's policy" or an "operator's policy" of liability insurance, certified as provided

> in section 4509.46 or 4509.47 of the Revised Code as proof of financial responsibility, and issued, except as provided in section 4509.47 of the Revised Code, by an insurance carrier authorized to do business in this state, to or for the benefit of the person named therein as insured.

R.C. 4509.01(L).

{¶ 36} The trial court relied on this Court's decision in *Safe Auto Ins. Co. v. Koroma*, 169 Ohio App.3d 747, 2006-Ohio-6742 (10th Dist.), acknowledging that, while the Act requires all drivers to maintain proof of financial responsibility, it obligates a driver to obtain a *certified* insurance policy only in certain circumstances. We stated in *Koroma*:

> In the event a person operates a motor vehicle in this state without proof of financial responsibility as defined in R.C. 4509.01(K), or commits any of the other triggering factors under R.C. 4509.101, the person, among other things, must file and continuously maintain proof of financial responsibility under sections R.C. 4509.44 to 4509.65. R.C. 4509.101(A)(5)(c). The proof of financial responsibility required under R.C. 4509.44 must be met through the means set forth in R.C. 4509.45, including "[a] certificate of insurance as provided in section 4509.46 or 4509.47 of the Revised Code." R.C. 4509.45(B).
>
> As R.C. 4509.46 explains, proof of financial responsibility for those who have violated R.C. 4509.101 "may be furnished by filing with the registrar of motor vehicles the written certificate of any insurance carrier authorized to do business in this state certifying that there is in effect a motor vehicle liability policy for the benefit of the person to furnish proof of financial responsibility." R.C. 4509.46. A motor vehicle policy "means an 'owner's policy' or 'operator's policy' of liability insurance, certified as provided in section 4509.46 or 4509.47 of the Revised Code as proof of financial responsibility, and issued, except as provided in section 4509.47 [proof of financial responsibility by non-resident] of the Revised Code, by an insurance carrier authorized to do business in this state, to or for the benefit of the person named therein as an insured." R.C.4509.01(L).

*Id.* at ¶ 11-12.

{¶ 37} The trial court relied on this holding in its decision and also relied on the holding of the Ninth District Court of Appeals in *George v. Ohio Cas. Group of Ins. Cos.*, 65

Ohio App.3d 416, 419 (9th Dist.1989), consistent with our holding in *Koroma*.  In *George*, the Ninth District described the operation of the Act as follows:

> The Financial Responsibility Act, R.C. 4509.01 *et seq.*, requires proof of financial responsibility in the form of a certified insurance policy only after the driver has failed to satisfy a judgment for damages arising from a car accident within a reasonable time or when the driver has been convicted of certain traffic offenses. *Bob-Boyd Lincoln Mercury v. Hyatt* (1987), 32 Ohio St.3d 300, 303, 513 N.E.2d 331, 334. Thus, the Ohio Legislature does not require all persons who carry automobile insurance to comply with the mandates of the Act. Thus, R.C. 4509.51 is not self-executing and is triggered only when the insurance policy has been certified. If the policy in effect at the time of the accident was not certified, then it is the language of the policy that controls. *Id.* at 302, 513 N.E.2d at 333; *State Farm Mut. Ins. Co. v. Callison* (Aug. 3, 1988), Wayne App. No. 2348, unreported, 1988 WL 82425.

 *Id.* at 419.

{¶ 38}   Additionally, " '[t]he issuance of a policy covering liability of an owner or operator is one act, and the certification by the insurer of the necessary financial responsibility which a named person must provide is a separate and distinct act, although it may be incidental to the issuance of the liability policy.' "  *Brook Park v. Americargo, Inc.*, 59 Ohio App.3d 23, 27 (8th Dist.1989), quoting *Globe Mut. Cas. Co. v. Teague*, 14 Ohio App.2d 186, 192 (1oth Dist.1967).

{¶ 39}   We note that both trial court judges who considered Patino's action, addressed First Acceptance's contention that "certified" is a term of art, and the policy could only be "certified" under Ohio's statutory procedure and that merely providing proof of the existence of an insurance policy was not the same as certifying a policy as proof of financial responsibility.  The two trial court judges each also addressed Patino's argument that the word "certified" is undefined in the policy and that the policy language makes no reference to Ohio's statutory scheme.  After reviewing the arguments of the parties, relevant governing statutes and applicable caselaw, both trial court judges determined that the focus of the underlying matter was not solely on the word "certified" but also on the complete provision of the Alvarez policy containing the word, "certified," including language that the household exclusion will not apply if the policy is "certified as proof of financial responsibility."

{¶ 40}   We concur in the trial court's conclusion that the Alvarez policy indicates "that a certified policy will comply with the *law*, i.e., the financial responsibility laws." (Emphasis sic.) (Mar. 15, 2019 Decision and Entry at 14.)  Consistent with this conclusion, the phrase "certified as proof of financial responsibility" has a definite legal meaning.  The trial court did not err in finding that First Acceptance's production of the Alvarez policy to the BMV was not the equivalent of certifying it as proof of financial responsibility. Therefore, the household member exclusion of the Alvarez policy applies without exception, and no coverage is available under that policy as coverage for damage caused by the collision in which Patino drove Alvarez's car.

## IV.  CONCLUSION

{¶ 41}   Based on our independent review of the record, we hold that the trial court's judgments denying Patino's motions for summary judgment and ruling in favor of First Acceptance are in accordance with the law.  We overrule Patino's two assignments of error and affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

DORRIAN and NELSON, JJ., concur.

NELSON, J., concurring.

{¶ 42}   I concur in the carefully expressed decision of the court.  I write further to express my understanding that under the terms of R.C. 4509.46, Mr. Patino (or anyone else) could, had he obtained a qualifying document, have filed with the registrar of motor vehicles a written certificate from the insurance company "certifying that there is in effect a motor-vehicle liability policy for the benefit of the person to furnish proof of financial responsibility."  I do not reach the question of whether Mr. Patino's submission to the BMV hearing officer satisfied the requirement that such a filing be made with "the registrar of motor vehicles" because the statute further recites a qualification that the Acceptance letter as submitted by Mr. Patino does not appear to have met:  "The certificate either shall state the expiration date of the policy, which date shall be not less than one year from the effective [date?] of the certificate, or if no expiration date is stated in the certificate, then such policy shall not expire until canceled or terminated as provided in section 4509.57 of the Revised Code."  Here, the proffered certificate did state an expiration date, but that expiration date of 12/22/2016 was well less than one year from the 10/18/16 issuance date that the

document carried.  The document therefore does not seem to me to qualify for Mr. Patino's purposes under the terms of the statute in any event.  *See also* R.C. 4509.47 (further suggesting that it is the effective date of the certification and not of the policy itself to which the statutes look).

{¶ 43}  Mr. Patino's briefing acknowledged that "[t]he parties and the trial court's 10/16/18 Decision are all in accord that R.C. 4509.46 is the relevant statute in this matter."  Brief of Appellant Patino at 17.  And that's sensible, in part because the same policy provision upon which he relies ("This limitation shall not apply if this policy is certified as proof of financial responsibility") makes clear through its contingent language that a policy is not automatically certified as proof of financial responsibility simply by virtue of being a policy.

{¶ 44}  The end result, then, is such that the reimbursement language from the Alvarez policy as quoted at paragraph 6 above ("You must reimburse us if we make a payment that we would not have made if this policy were not certified as proof of financial responsibility") does not come into play at this juncture.

_____